UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERICK DIAZ CRUZ,<br><br>                              *Plaintiff,*<br><br>v.<br><br>JOHN DOE 1, Officer of U.S. Immigration and Customs Enforcement,<br><br>                              *Defendant.* | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Erick Diaz Cruz, by and through his counsel, hereby alleges the following:

**PRELIMINARY STATEMENT**

1. While Erick Diaz Cruz, an unarmed twenty-six-year-old man from Mexico, was visiting his mother at her longtime home in Brooklyn, a United States Immigrations and Customs Enforcement ("ICE") officer shot him in the face at point blank range. He brings this civil rights case seeking redress for the grievous injuries he suffered as a result of this indefensible and horrific shooting.

2. On the morning of Thursday, February 6, 2020, Mr. Diaz Cruz was asleep in his mother's house in Gravesend, Brooklyn. He awoke to the sounds of men's voices and banging on the door. Shortly thereafter, he heard screaming and exited the house to find two men—later identified as ICE officers—engaged in a confrontation in the street with his mother's long-time partner, Gaspar Avendaño-Hernandez. Minutes later, standing only a few feet from one of the officers, Mr. Diaz Cruz saw the ICE officer reach for something at his hip. Mr. Diaz Cruz covered his face for protection. The ICE officer fired a gun directly at Mr. Diaz Cruz's face. The bullet passed through Mr. Diaz Cruz's left hand and into his left cheek, lodging behind his ear.

3. At the time of the shooting, neither Mr. Diaz Cruz nor anyone at the scene was armed. The officers were not under threat by Mr. Diaz Cruz or anyone else near him—much less in immediate danger of deadly or serious bodily harm. Mr. Diaz Cruz's shooting, at the start of the school and work day, in the middle of a quiet Brooklyn neighborhood full of young families, was senseless and unjustified. In those few seconds, Mr. Diaz Cruz's life was forever altered. What had started as a pleasant vacation with his girlfriend to see his family in New York, and a welcome break from his steady job as a municipal employee in Veracruz, Mexico, became a horrific, life-altering trip causing him grave and permanent injuries. Today, the left side of Mr. Diaz Cruz's face is covered by a snaking set of wounds, he has multiple fractures in his face and hand, and the bullet remains lodged in his neck.

4. Mr. Diaz Cruz now brings this lawsuit for monetary damages for this lawless shooting, alleging claims under the Fourth and Fifth Amendments to the United States Constitution.

**JURISDICTION AND VENUE**

5. This case is brought pursuant to *Bivens* and the Fourth and Fifth Amendments to the United States Constitution. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

6. Venue is proper in the Eastern District of New York because a substantial part of the events complained of and giving rise to Plaintiff's claims occurred in this District. *See* 28 U.S.C. §§ 1391(b), 1391(e), 1402(b).

## PARTIES

7. Plaintiff ERICK DIAZ CRUZ is a Mexican national who lives in Martínez de la Torre, Veracruz, Mexico. At the time of the shooting, Mr. Diaz Cruz was visiting his family in Brooklyn, New York on a valid tourist visa.

8. Plaintiff is unaware of the true name and capacity, whether individual or otherwise, of Defendant John Doe 1, an ICE officer, and therefore sues this Defendant by a fictitious name.

9. John Doe 1 is a Latino man who is approximately five feet and nine inches tall and muscular. On the day of the incident in question, he was wearing black pants, a black jacket, and a black knit cap. John Doe 1 is an ICE officer.

10. Defendant John Doe 1 acted under color of law.

11. ICE is an agency within the U.S. Department of Homeland Security ("DHS").

12. Plaintiff will amend this Complaint to allege John Doe 1's true name and capacity when it has been ascertained.

## JURY DEMAND

13. Plaintiff demands a trial by jury in this action on each of his claims.

## FACTS

**Mr. Diaz Cruz's Life Before the Shooting**

14. Mr. Diaz Cruz is a twenty-six-year old man who lives in Martínez de la Torre, Veracruz, Mexico with his girlfriend of eight years, Jennifer. Mr. Diaz Cruz has a bachelor's degree in International Commerce from the University of Veracruz.

15. Mr. Diaz Cruz works as the presiding assistant for the Mayor of Martínez de la Torre, Teresa Herrera Martinez, a position he has held for several years. In this position, he

works directly with the Mayor and is responsible, among other things, for keeping records of municipal contracts.  Mr. Diaz Cruz also operates a small car-wash business in Martínez de la Torre.

16. Mr. Diaz Cruz's mother, Carmen Cruz, and his younger brother, Kevin Cruz, live in Gravesend, Brooklyn.

17. After obtaining visitor's visas to travel to the United States, Mr. Diaz Cruz and Jennifer bought round-trip tickets to New York and embarked on a two-week vacation to visit his family.  Mr. Diaz Cruz had not seen his mother in many years and this was the first time his mother would meet his girlfriend.

18. Mr. Diaz Cruz and Jennifer arrived in Brooklyn on January 25, 2020.

19. During their visit they stayed in a spare bedroom in Ms. Cruz's house in Gravesend, Brooklyn, where she lives with her long-time partner Gaspar Avendaño-Hernandez.

20. During their visit, Mr. Diaz Cruz and Jennifer went sight-seeing, explored the neighborhood, and went out for meals with his family.  They were happy to be with family and on vacation.

**The Shooting**

21. On the morning of February 6, 2020, Mr. Diaz Cruz awoke in his mother's home to hear banging on the door and men shouting.

22. Shortly thereafter, he heard screaming and crying on the street.  Mr. Diaz Cruz quickly dressed in a t-shirt, jeans, and boots and exited the house.

23. Once outside, Mr. Diaz Cruz saw Defendant John Doe 1 and another man—John Doe 2—engaged in a struggle in the middle of the street with Mr. Avendaño-Hernandez.

24. A third man, John Doe 3, stood nearby, placing himself between the confrontation and bystanders.

25. John Doe 2 is an Asian man who is approximately five feet and seven inches tall and heavy set. On the day of the incident in question, he was wearing jeans, a green-gray hooded jacket and a grey baseball cap. John Doe 2 is an ICE officer.

26. John Doe 3 is a white man who is approximately six feet and two inches tall, has a large build, and is bald. On the day of the incident in question, he was wearing black pants and a black hooded jacket. On information and belief, John Doe 3 is an ICE officer.

27. Mr. Diaz Cruz's mother Carmen, younger brother Kevin, and several bystanders and neighbors were standing near the confrontation observing.

28. Mr. Diaz Cruz walked into the street towards his mother Carmen, who was visibly upset, and hugged her.

29. Mr. Diaz Cruz saw John Does 1 and 2 wrestling with Mr. Avendaño-Hernandez, repeatedly using a taser on him, and attempting to place him in handcuffs and move him towards their vehicle.

30. After a few minutes, Mr. Avendaño-Hernandez ran away from John Does 1 and 2, who were in the street, towards Carmen Cruz's home. John Doe 1 ran after him.

31. John Doe 1 grabbed Mr. Avendaño-Hernandez and tried to pull him back towards the street, away from the house.

32. Mr. Avendaño-Hernandez grabbed onto a metal pole attached to a wall next to the staircase leading up to Carmen Cruz's home.

33. Mr. Diaz Cruz walked towards Mr. Avendaño-Hernandez and John Doe 1.

5

34. Mr. Diaz Cruz stood on the steps leading up to the house, between Mr. Avendaño-Hernandez and the front door.

35. Mr. Diaz Cruz had his back to the house and was facing John Doe 1.

36. John Doe 1 was approximately four feet away from Mr. Diaz Cruz, with Mr. Avendaño-Hernandez between them.

37. John Doe 1 did not give Mr. Diaz Cruz any verbal instructions to move away from Mr. Avendaño-Hernandez or to take, or cease, any action.

38. Seconds later, Mr. Diaz Cruz saw John Doe 1 reach with his right hand towards John Doe 1's right hip.

39. Believing John Doe 1 was reaching for pepper spray, Mr. Diaz Cruz covered his face with his left hand to protect his eyes.

40. Instead, John Doe 1 pulled out a gun, pointed it at Mr. Diaz Cruz's face, and fired.

41. John Doe 1 did not issue any warning to Mr. Diaz Cruz before firing.

42. The bullet tore through Mr. Diaz Cruz's left hand and entered his left cheek.

43. Mr. Diaz Cruz collapsed on the sidewalk bleeding profusely from his hand and face.

44. Upon information and belief, Mr. Avendaño-Hernandez witnessed John Doe 1 shooting Mr. Diaz Cruz.

45. Mr. Diaz Cruz posed no danger to John Doe 1 or anyone else.

46. Mr. Diaz Cruz was unarmed and John Doe 1 had no reason to believe he was armed.

47. Mr. Diaz Cruz was not wearing a jacket or other clothing that could have concealed a weapon and at no point did he reach his hands towards his pants.

6

48. Mr. Diaz Cruz made no threatening statements or movements to John Doe 1.

49. At no point did John Doe 1 have any legitimate reason to draw his firearm.

50. Defendant's actions in shooting Mr. Diaz Cruz were unreasonable and excessive, and were unnecessary to defend against bodily injury or deadly force. Defendant acted intentionally with the specific purpose of causing serious harm and/or death to Mr. Diaz Cruz without legal justification.

51. Defendant acted under color of law.

52. Defendant's actions in shooting Mr. Diaz Cruz were also contrary to DHS policy, which states that a DHS law enforcement officer ("LEO") may discharge a firearm at a person "only when the LEO has a reasonable belief that the subject of such force poses an imminent threat of death or serious bodily injury to the LEO or to another person."[1]

53. Defendant at no time could have reasonably believed that Mr. Diaz Cruz posed an imminent threat of death or serious bodily injury to him or anyone present.

54. Upon information and belief, the officer responsible for Mr. Diaz Cruz's shooting is still employed by ICE and has not suffered disciplinary action.

**Harm Suffered by Plaintiff Because of Defendant's Actions**

55. Mr. Diaz Cruz was taken to Maimonides Hospital in Brooklyn, New York, for treatment of his injuries.

56. He was diagnosed with extensive acute traumatic fractures of several bones in his face, including his left maxilla, zygomatic bone, ethmoid bone, and pterygoid plates.

---

[1] U.S. Department of Homeland Security, Policy Statement 044-05, "Department Policy on the Use of Force," Sept. 7, 2018, *available at* https://www.dhs.gov/sites/default/files/publications/mgmt/law-enforcement/mgmt-dir_044-05-department-policy-on-the-use-of-force.pdf.

57. He also was diagnosed with acute fractures to the ulnar aspect of his left wrist and hand.

58. The hospital documented significant damage to his sinus walls.

59. The hospital documented impairment to the vision in his left eye.

60. Mr. Diaz Cruz's treating physicians observed extensive bullet fragments throughout the left side of his face, with the largest bullet fragment lodged in the soft tissue behind his left ear.

61. Mr. Diaz Cruz underwent two surgeries at Maimonides Hospital as a result of being shot, one surgery to his face and one to his hand.

62. Mr. Diaz Cruz will require countless more medical interventions for his serious injuries.

63. Doctors were unable to remove the bullet from Mr. Diaz Cruz's head because its location in his head would make surgery dangerous.

64. Mr. Diaz Cruz spent five days in the hospital.

65. Mr. Diaz Cruz faces a long and uncertain road to recovery.

66. Mr. Diaz Cruz has multiple stiches and wounds covering the left side of his face. He may require plastic surgery to correct the disfigurement to his face caused by the bullet ripping a hole in his cheek.

67. Currently, Mr. Diaz Cruz has limited vision from his left eye.  Mr. Diaz Cruz may suffer from lasting vision loss to his left eye, as a result of the shooting.

68. Currently, Mr. Diaz Cruz cannot move and has no use of his left hand or arm, which are heavily bandaged.

69. Defendant proximately caused Mr. Diaz Cruz's injuries by shooting him in the face without justification.

70. The Defendant's shooting of Mr. Diaz Cruz caused him excruciating pain, emotional distress, trauma, and lasting injuries.

71. Plaintiff has suffered significant damages, in an amount to be proven at trial.

## CAUSES OF ACTION

### CLAIM ONE
### VIOLATION OF THE FOURTH AMENDMENT

72. The foregoing allegations are re-alleged and incorporated herein by reference.

73. At the time Defendant shot Mr. Diaz Cruz, neither Defendant nor anyone else was in danger of fatal or bodily harm from Mr. Diaz Cruz or anyone else.

74. In shooting Mr. Diaz Cruz, Defendant acted intentionally and used unreasonable and excessive force with the purpose of causing harm to Mr. Diaz Cruz without legal justification.

75. Defendant's actions violated the Fourth Amendment's prohibition against seizures with excessive and unreasonable force.

### CLAIM TWO
### VIOLATION OF THE FIFTH AMENDMENT

76. The foregoing allegations are re-alleged and incorporated herein by reference.

77. At the time Defendant shot Mr. Diaz Cruz, neither Defendant nor anyone else was in danger of fatal or bodily harm from Mr. Diaz Cruz or anyone else.

78. In shooting Mr. Diaz Cruz, Defendant acted intentionally, maliciously, and used unreasonable and excessive force, with the purpose of causing harm to Mr. Diaz Cruz without legal justification. Defendant's actions were unnecessary to achieve any legitimate law enforcement objective.

79.     Defendant's actions were grossly excessive, deliberately indifferent, and shocked the conscience in violation of the substantive due process component of the Fifth Amendment.

## ADDITIONAL CLAIMS

80.     In addition to filing this complaint, Plaintiff is presenting a claim pursuant to the Federal Torts Claim Act seeking relief from the United States of America.  If the claim is denied, Plaintiff will seek leave to amend this complaint to seek monetary relief from the United States of America for various torts committed.

## RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

81. A declaration that Defendant's actions violated the Constitution.

82. Damages, including punitive damages, in an amount to be proven at trial.

83. Costs and reasonable attorneys' fees.

84. Such other relief as the Court deems just and equitable.


Dated: February 19, 2020
      New York, New York

      EMERY CELLI BRINCKERHOFF
      & ABADY LLP

      /s/ Katherine Rosenfeld
      Katherine Rosenfeld
      Scout Katovich
      600 Fifth Avenue, 10th Floor
      New York, New York 10020
      (212) 763-5000

*Attorneys for Plaintiff*