UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ERICK DIAZ CRUZ,
    *Plaintiff,*

v.

JOHN DOE 1, Officer of U.S. Immigration and Customs Enforcement,

    *Defendant.*

---

Index No. 20 Civ. 891

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

 

March 17, 2020

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................ ii-iii

PRELIMINARY STATEMENT ............................................................................................... 1

    I.    FACTS ............................................................................................................. 2

    II.    ARGUMENT ................................................................................................... 5

        A.    Legal Standard Governing Expedited Discovery Requests to Identify
            An Unknown Defendant ................................................................................ 5

        B.    There is Good Cause for the Court to Grant Mr. Diaz Cruz's Request
            for Expedited Discovery ................................................................................ 7

        1.    The Complaint Makes A *Prima Facie* Case of Excessive Force ................. 7

        2.    Mr. Diaz Cruz Seeks Limited and Specific Discovery ............................... 8

        3.    Mr. Diaz Cruz Has No Alternative Means to Obtain Defendant Doe's
            True Identity ................................................................................................. 9

        4.    The Requested Information is Crucial to Advancing Mr. Diaz Cruz's
            Claims .......................................................................................................... 9

        5.    Defendant Doe's Privacy Interests are Greatly Outweighed by
            Plaintiff's Interest in Seeking Redress for His Unlawful Shooting ........... 10

CONCLUSION ....................................................................................................................... 11

TABLE OF AUTHORITIES

**Cases**

*Arista Records, LLC v. Doe 3*,
 604 F.3d 110 (2d Cir. 2010) ................................................................................................ 1, 7

*Ayyash v. Bank Al–Madina*,
 233 F.R.D. 325 (S.D.N.Y. 2005) .............................................................................................. 7

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
 403 U.S. 388 (1971) ................................................................................................................. 6

*Bloomberg, L.P. v. John Does 1-4*,
 No. 13 Civ. 01787 (LGS), 2013 WL 4780036 (S.D.N.Y. June 26, 2013) ............................... 5

*Cotto v. City of New York*,
 No. 15 Civ. 9123 (RWS), 2017 WL 3476045 (S.D.N.Y. Aug. 11, 2017) ............................... 6

*Davis v. Kelly*,
 160 F.3d 917 (2d Cir. 1998) ..................................................................................................... 6

*In re Various Strike 3 Holdings, LLC Copyright Infringement Cases*,
 No. 17 Civ. 6717 (ENV), 2018 WL 3404142 (E.D.N.Y. July 11, 2018) ................................. 9

*Kinglsey v. Hendrickson*,
 135 S. Ct. 2466 (2015) ............................................................................................................. 8

*Malibu Media, LLC v. Doe*,
 No. 14 Civ. 4808 (JS)(SIL), 2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016) ......................... 5, 9

*Malibu Media, LLC v. Doe*,
 No. 18 Civ. 5611 (DLC), 2018 WL 6011615 (S.D.N.Y. Nov. 16, 2018) ................................ 8

*Sealed Plaintiff v. Sealed Defendant*,
 537 F.3d 185 (2d Cir. 2008) ................................................................................................... 10

*Sony Music Entm't Inc. v. Does 1-40*,
 326 F. Supp. 2d 556 (S.D.N.Y. 2004) ...................................................................................... 9

*Strike 3 Holdings, LLC v. Doe*,
 No. 18 Civ. 05590 (AJN), 2018 WL 3756453 (S.D.N.Y. July 19, 2018) ................................ 5

*Strike 3 Holdings, LLC v. Doe*,
 No. 19 Civ. 00945 (NGG)(RLM), 2019 WL 4752094 (E.D.N.Y. Sept. 30, 2019) ............. 7, 8

*Tennessee v. Garner*,
 471 U.S. 1 (1985) ..................................................................................................................... 8

*UN4 Prods., Inc. v. Doe-173.68.177.95*,
 No. 17 Civ. 3278 (PKC)(SMG), 2017 WL 2589328 (E.D.N.Y. June 14, 2017) ................ 9

*United States v. Gori,*
 230 F.3d 44 (2d Cir. 2000) ........................................................................................ 10

*Valentin v. Dinkins*,
 121 F.3d 72 (2d Cir. 1997) ......................................................................................... 6

**Other Authorities**

Fed. Practice and Procedure § 2046.1 ....................................................................... 7

Fed. R. Civ. P. 26 ........................................................................................................ 6

Plaintiff Erick Diaz Cruz submits this memorandum of law in support of his motion for leave to take immediate discovery for the limited purpose of identifying the Doe defendant in this case.

## PRELIMINARY STATEMENT

On February 6, 2020, an unidentified United States Immigration and Customs Enforcement ("ICE") officer shot Erick Diaz Cruz in the face at point blank range on the steps of his mother's home in Brooklyn. At the time, Mr. Diaz Cruz was on vacation in New York, visiting family and enjoying time off from his job as a municipal employee in Veracruz, Mexico.

On February 19, 2020, Mr. Diaz Cruz filed this lawsuit, alleging violation of his constitutional rights, against the unknown ICE officer as a John Doe defendant ("Defendant Doe"). Mr. Diaz Cruz now seeks limited, immediate discovery in order to identify Defendant Doe. Such discovery is necessary for Mr. Diaz Cruz to identify and properly serve the defendant, and thus to move forward in the prosecution of his civil rights case.

Mr. Diaz Cruz seeks leave to serve a subpoena on ICE seeking the true name and business address of Defendant Doe. All five factors analyzed in the Second Circuit to determine whether good cause exists to permit expedited discovery to identify a Doe defendant weigh strongly in Mr. Diaz Cruz's favor. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010). First, Mr. Diaz Cruz's complaint alleges a *prima facie* case of unconstitutional excessive force against Defendant Doe. Second, the discovery sought—the name and business address of Defendant Doe—is sufficiently specific. Third, Mr. Diaz Cruz has no alternative means of discovering the true identity of Defendant Doe. Fourth, the requested information is crucial to Mr. Diaz Cruz's ability to name and serve the proper defendant in this lawsuit and thus seek redress for the horrific injuries he suffered. And finally, Defendant Doe has no expectation of privacy that would justify withholding his identity from Mr. Diaz Cruz.

Mr. Diaz Cruz alleges that he was the victim of serious and unlawful violence by a federal officer while visiting the United States on vacation. Mr. Diaz Cruz now seeks to ensure that the officer who committed this act will be required to participate in this federal court action. Obtaining court-ordered discovery is the first and crucial step towards Mr. Diaz Cruz's ability to prosecute his federal claims and vindicate his rights in a judicial forum.

## I.     FACTS

Mr. Diaz Cruz is a twenty-six-year-old man who lives in Martínez de la Torre, Veracruz, Mexico, where he works as the presiding assistant for the Mayor. Compl. ¶¶ 14-15. On January 25, 2020, after obtaining visitors' visas to travel to the United States, Mr. Diaz Cruz and his girlfriend Jennifer travelled to New York to visit Mr. Diaz Cruz's mother, Carmen Cruz, and younger brother, Kevin Cruz. *Id.* ¶¶ 16-18.

On the morning of February 6, 2020, Mr. Diaz Cruz awoke in his mother's home in Gravesend, Brooklyn to hear banging on the door and men shouting. *Id.* ¶ 21. Shortly thereafter, Mr. Diaz Cruz exited the house to see Defendant Doe and another ICE officer engaged in a struggle in the middle of the street with Gaspar Avendaño-Hernandez, Carmen Cruz's long-term partner. *Id.* ¶ 23. Defendant Doe is a Latino man who is approximately five feet and nine inches tall and muscular. *Id.* ¶ 9. On the day of the incident in question, he was wearing black pants, a black jacket, and a black knit cap. *Id.*

Mr. Diaz Cruz's mother Carmen, younger brother Kevin, and several bystanders and neighbors were standing near the confrontation observing. *Id.* ¶ 27. Mr. Diaz Cruz saw Defendant Doe and the second ICE officer wrestling with Mr. Avendaño-Hernandez, repeatedly using a taser on him, and attempting to place him in handcuffs and move him towards their vehicle. *Id.* ¶ 29.

After a few minutes, Mr. Avendaño-Hernandez ran away from the ICE officers, who were in the street, towards Carmen Cruz's home. *Id.* ¶ 30. Defendant Doe ran after him. *Id.* Defendant Doe grabbed Mr. Avendaño-Hernandez and tried to pull him back towards the street, away from the house. *Id.* ¶ 31. Mr. Avendaño-Hernandez grabbed onto a metal pole attached to a wall next to the staircase leading up to Carmen Cruz's home. *Id.* ¶ 32.

Mr. Diaz Cruz walked towards Mr. Avendaño-Hernandez and Defendant Doe and stood on the steps leading up to the house, between Mr. Avendaño-Hernandez and the front door. *Id.* ¶¶ 33-34. Mr. Diaz Cruz was facing Defendant Doe and had his back to the house. *Id.* ¶ 35. Defendant Doe was approximately four feet away from Mr. Diaz Cruz, with Mr. Avendaño-Hernandez between them. *Id.* ¶ 36. Defendant Doe did not give Mr. Diaz Cruz any verbal instructions to move away from Mr. Avendaño-Hernandez or to take, or cease, any action. *Id.* ¶ 37. Seconds later, Mr. Diaz Cruz saw Defendant Doe reach with his right hand towards Defendant Doe's right hip. *Id.* ¶ 38. Believing Defendant Doe was reaching for pepper spray, Mr. Diaz Cruz covered his face with his left hand to protect his eyes. *Id.* ¶ 39. Instead, Defendant Doe pulled out a gun, pointed it at Mr. Diaz Cruz's face, and fired. *Id.* ¶ 40. Defendant Doe did not issue any warning to Mr. Diaz Cruz before firing. *Id.* ¶ 41. The bullet tore through Mr. Diaz Cruz's left hand and entered his left cheek. *Id.* ¶ 42. Mr. Diaz Cruz collapsed on the sidewalk, bleeding profusely from his hand and face. *Id.* ¶ 43.

Mr. Diaz Cruz posed no danger to Defendant Doe or anyone else. ¶ 45. He was unarmed and Defendant Doe had no reason to believe he was armed. *Id.* ¶ 46. Mr. Diaz Cruz was not wearing a jacket or other clothing that could have concealed a weapon, and at no point did he reach towards his pants. *Id.* ¶ 47. Nor did Mr. Diaz Cruz make any threatening statements or movements. *Id.* ¶ 48.

After the shooting, Mr. Diaz Cruz was taken to Maimonides Hospital in Brooklyn, New York, where he was diagnosed with extensive acute traumatic fractures of several bones in his face and his left wrist and hand. *Id.* ¶¶ 55-57. The hospital also documented significant damage to his sinus walls, impairment to the vision in his left eye, and extensive bullet fragments throughout the left side of his face. *Id.* ¶¶ 58-60. Mr. Diaz Cruz spent five days in the hospital, where he underwent two surgeries, one to his face and one to his hand. *Id.* ¶¶ 61, 64. Doctors were unable to remove the bullet, which had lodged in the soft tissue behind Mr. Diaz Cruz's left ear, because its location would make surgery dangerous. *Id.* ¶¶ 60, 63. Mr. Diaz Cruz now has stitches and wounds covering the left side of his face, limited vision in his left eye, and no ability to move and use his left hand or arm. *Id.* ¶¶ 66-68. Mr. Diaz Cruz faces a long and uncertain road to recovery, and will require countless additional medical interventions. *Id.* ¶ 65.

On February 19, 2020, Mr. Diaz Cruz filed this lawsuit alleging violations of the Fourth and Fifth Amendments of the U.S. Constitution. *See* Dkt. 1. The Complaint seeks damages for the injuries and trauma caused to Mr. Diaz Cruz by Defendant Doe.

Since the incident underlying this lawsuit, Mr. Diaz Cruz's attorneys have diligently sought to identify and serve Defendant Doe. On February 13, 2020, counsel for Mr. Diaz Cruz sent a Freedom of Information Law ("FOIL") request to the New York Police Department, which arrived at the scene shortly after the shooting, seeking records related to events surrounding Mr. Diaz Cruz's shooting. Katovich Decl. ¶ 4. This request, as well as Mr. Diaz Cruz's subsequent appeal, were denied. *Id.* ¶¶ 4, 5. On March 3, 2020, Mr. Diaz Cruz sent a copy of the summons and complaint to the New York field office for ICE. Katovich Decl. ¶ 6. On March 9, 2020, Mr. Diaz Cruz delivered a copy of the complaint and summons to the United States Attorney for the Eastern District of New York. *Id.* ¶ 7. On March 5, 2020, counsel for Mr.

4

Diaz Cruz called and left voicemails for two Assistant U.S. Attorneys for the Eastern District of New York who are assigned to a related criminal investigation. *Id.* ¶ 8. On March 11, Counsel for Mr. Diaz Cruz sent a letter to these same Assistant U.S. Attorneys explaining that they were seeking assistance with identifying Defendant Doe and alerting them to Mr. Diaz Cruz's intention to file the present motion. *Id.* ¶ 9. On March 16, Counsel for Mr. Diaz Cruz submitted Freedom of Information Act requests to ICE and the Department of Homeland Security's Office of the Inspector General, seeking, *inter alia*, the name and business address of Defendant Doe. *Id.* ¶ 10. To date none of these efforts have been successful in revealing Defendant Doe's identity.

**II.     ARGUMENT**

    **A.     Legal Standard Governing Expedited Discovery Requests to Identify An Unknown Defendant**

Courts in the Second Circuit routinely grant expedited third-party discovery to identify Doe defendants. *See Bloomberg, L.P. v. John Does 1-4*, No. 13 Civ. 01787 (LGS), 2013 WL 4780036, at *1 (S.D.N.Y. June 26, 2013) (granting motion for expedited discovery to serve Rule 45 subpoena on Google in order to identify Doe defendants' names, email addresses, telephone numbers, e-mail addresses, and IP addresses); *Strike 3 Holdings, LLC v. Doe*, No. 18 Civ. 05590 (AJN), 2018 WL 3756453, at *3 (S.D.N.Y. July 19, 2018) (granting motion for expedited discovery to serve Rule 45 subpoena on internet service provider to obtain Doe defendant's true name and address); *Malibu Media, LLC v. Doe*, No. 14 Civ. 4808 (JS)(SIL), 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016) (collecting cases granting leave to serve subpoenas to identify Doe defendants); *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) ("discovery may be necessary before a defendant may be fully identified").

While, for the most part, requests for expedited discovery to identify Doe defendants occur in the context of intellectual property actions, where plaintiffs often initially identify infringing defendants solely by their IP addresses, courts also recognize the need for such discovery in civil rights actions. In *Bivens*, for example, the district court assisted the plaintiff in serving the unknown defendants by ordering that the records of the United States Attorney be used to identify those officers upon whom the complaint should be served. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390, n.2 (1971);*see also Valentin*, 121 F.3d at 75 (vacating dismissal of *pro se* litigant's excessive force claims where plaintiff should have been permitted to conduct discovery to identify the defendant); *Cotto v. City of New York*, No. 15 Civ. 9123 (RWS), 2017 WL 3476045, at *6 (S.D.N.Y. Aug. 11, 2017) (listing subpoena to attempt to identify unnamed police officer defendant as one means to exercise due diligence in identifying Doe defendant). The Second Circuit recognizes that, in suits alleging wrongdoing by unidentified officers, plaintiffs should be "afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (collecting cases). Where, as here, an unidentified officer is the sole defendant in the action, third party discovery is warranted.

While Federal Rule of Civil Procedure 26(d)(1) generally forbids a party from seeking discovery prior to a Rule 26(f) conference, this rule provides that a party may engage in discovery before such a conference pursuant to court order. Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order."). "In this circuit, courts assess applications for expedited discovery prior to a Rule 26(f) conference under a 'flexible standard of reasonableness and good cause.'" *Strike 3 Holdings, LLC v. Doe*, No. 19 Civ. 00945

6

(NGG)(RLM), 2019 WL 4752094, at *1 (E.D.N.Y. Sept. 30, 2019) (*quoting Ayyash v. Bank Al–Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)). *See also* 8A Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

The Second Circuit uses a five-factor analysis to determine whether a request for expedited discovery to identify a Doe defendant meets the "reasonableness and good cause standard" and thus should be granted:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Arista Records, LLC*, 604 F.3d, at 119 (internal citation omitted); *see also Bloomberg*, 2013 WL 4780036, at *3 (applying this five-factor analysis to determine whether a request for expedited discovery should be granted). "Although first articulated in an opinion deciding a motion to quash a Rule 45 subpoena . . . , courts have also applied the factors when assessing a plaintiff's initial *ex parte* motion for a Rule 45 subpoena." *Strike 3 Holdings, LLC*, 2019 WL 4752094, at *2 n.1.

### B. There is Good Cause for the Court to Grant Mr. Diaz Cruz's Request for Expedited Discovery

All of the *Arista* factors weigh in favor of granting Mr. Diaz Cruz's request for expedited discovery.

#### 1. The Complaint Makes A *Prima Facie* Case of Excessive Force

7

The allegations in the Complaint make out a *prima facie* claim of excessive force, in violation of the Fourth and Fifth Amendments of the United States Constitution. To make out a claim of excessive force under the Fourth Amendment, a complaint must allege that the defendant used lethal force against a plaintiff who "pose[d] no immediate threat to the officer and no threat to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Excessive force claims in violation of Due Process must allege that the "force purposely or knowingly used against [the plaintiff] was objectively unreasonable." *Kinglsey v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (analyzing excessive force Due Process claim under the Fourteenth Amendment).

Mr. Diaz Cruz has made out a *prima facie* case of unconstitutional excessive force. As set forth in the Complaint, Defendant Doe, unprovoked, intentionally shot Mr. Diaz Cruz in the face for no legitimate reason. Compl. ¶¶ 36-40. Mr. Diaz Cruz presented no immediate threat to Defendant Doe; he was unarmed and made no threatening statements or movements. ¶¶ 46, 48. Defendant Doe did not issue any warning to Mr. Diaz Cruz prior to firing the gun. *Id.* ¶ 41. Defendant Doe could not have reasonably believed that Mr. Diaz Cruz posed an imminent threat of death or serious bodily injury to Defendant Doe or to anyone else. *Id.* ¶¶ 48, 53.

### 2.    Mr. Diaz Cruz Seeks Limited and Specific Discovery

Mr. Diaz Cruz's proposed subpoena is extremely limited, seeking only the name and business address of Defendant Doe. Courts routinely find that discovery requests are sufficiently specific "where they seek[] only the name and address of the" Doe defendant. *Malibu Media, LLC v. Doe*, No. 18 Civ. 5611 (DLC), 2018 WL 6011615, at *2 (S.D.N.Y. Nov. 16, 2018). *See also Strike 3 Holdings, LLC*, 2019 WL 4752094, at *2 ("Plaintiff has made a request for discovery that is sufficiently specific, asking for . . . only Defendant's name and physical address."); *Malibu Media, LLC,* 2016 WL 4574677, at *6 (collecting cases granting

8

leave to serve subpoenas of similar scope). The discovery sought by Mr. Diaz Cruz—Defendant Doe's name and business address—is "limited, specific, and narrowly tailored to further its objective of identifying and effecting service on defendant[]." *UN4 Prods., Inc. v. Doe-173.68.177.95*, No. 17 Civ. 3278 (PKC)(SMG), 2017 WL 2589328, at *2 (E.D.N.Y. June 14, 2017).

### 3. Mr. Diaz Cruz Has No Alternative Means to Obtain Defendant Doe's True Identity

Mr. Diaz Cruz has very limited information about Defendant Doe and has exhausted any alternative means of determining his true identity. Mr. Diaz Cruz's attorneys have attempted to learn Defendant Doe's name through a FOIL request, through requests for assistance to Assistant U.S. Attorneys assigned to a related criminal investigation into the incident, through service of the complaint on ICE and the United States Attorney for the Eastern District of New York, and through a FOIA request. Katovich Decl. ¶¶ 4-10. To date, none of these avenues have proved fruitful. There is simply no alternative means through which Mr. Diaz Cruz can obtain information sufficient to name and serve Defendant Doe.

### 4. The Requested Information is Crucial to Advancing Mr. Diaz Cruz's Claims

Without the requested discovery, Mr. Diaz Cruz "will be unable to serve [the] defendant, which would effectively terminate [the] action without an adjudication on the merits." *In re Various Strike 3 Holdings, LLC Copyright Infringement Cases*, No. 17 Civ. 6717 (ENV), 2018 WL 3404142, at *3 (E.D.N.Y. July 11, 2018). "Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004).

9

### 5. Defendant Doe's Privacy Interests are Greatly Outweighed by Plaintiff's Interest in Seeking Redress for His Unlawful Shooting

Mr. Diaz Cruz's interest in pursuing his civil rights case against Defendant Doe is great. Mr. Diaz Cruz alleges that he was the victim of senseless and unlawful violence committed by a federal officer. He faces grave and lifelong injuries, for which he seeks compensation. *See* Compl. ¶¶ 55-71. His ability to pursue his claims for redress of his unlawful shooting is paramount, not only to him, but also to upholding the guarantees of the United States Constitution.

In contrast, Defendant Doe has no cognizable privacy interest in withholding his identity from Mr. Diaz Cruz. Defendant Doe is a federal employee, and the incident in question took place on a public street. *See United States v. Gori,* 230 F.3d 44, 53 (2d Cir. 2000) (holding that "there was no expectation of privacy" in what could be seen in the "public view" in the Fourth Amendment context). Pursuant to Federal Rule of Civil Procedure 10(a), "[t]he title of the complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). Discovery of Defendant Doe's identity will in no way infringe on any legitimate expectation of privacy but will be decisive in Mr. Diaz Cruz's ability to vindicate his constitutional rights.

Moreover, the proposed order submitted by Mr. Diaz Cruz would require ICE to notify Defendant Doe of the subpoena and to provide him with a copy of the Complaint two weeks before providing the requested discovery to Mr. Diaz Cruz. *See* Katovich Decl., Ex. A. The order would thus afford Defendant Doe an opportunity to raise any privacy concerns with the Court before his identity is disclosed. *See Arista Records*, 604 F.3d at 113 (affirming order requiring recipient of subpoena to notify Doe defendants of intention to disclose identifying

10

information to plaintiffs). Alternatively, it would allow Defendant Doe the opportunity to confer with counsel who could agree to accept service on his behalf or provide a business address for service.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Proposed Order attached to the Katovich Declaration as Exhibit A to allow Plaintiff to serve the subpoena annexed as Exhibit B to the Katovich Declaration.

Dated: March 17, 2020
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

/s/
Scout Katovich
Katherine Rosenfeld

600 Fifth Avenue, 10th Floor
New York, New York 10020

(212) 763-5000

*Attorneys for Plaintiff*