

**eeplaw.com**
80 Pine Street, 38th Floor
New York, New York 10005
T. 212.532.1116 F. 212.532.1176

New Jersey Office
576 Main Street, Suite C
Chatham, New Jersey 07928

May 10, 2021

**BY ECF**
Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Cruz v. United States of America, et ano.*, 20 CV 891 (EK) (SJB)

Your Honor:

    I represent plaintiff in the above-referenced matter. I write pursuant to Rule III.B.4 of the Court's Individual Practices to respectfully respond to defendant Santana's pre-motion conference request dated May 3, 2021 and filed at DE #35. For the reasons set forth below, plaintiff will oppose the motion.

**Intentionally Shooting a Civilian in the Face is a Fourth Amendment 'Seizure'**

    Defendant Santana's thesis is that he did not seize plaintiff when, while arresting a third party under color of federal law, he intentionally shot Mr. Diaz Cruz, an unarmed civilian bystander, in the face at point blank range. DE #35, p. 3. This argument is contrary to the core function of the Fourth Amendment – "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals," *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976) – and has been roundly rejected by every Supreme Court case to consider the question.

    In *Terry v. Ohio*, the Supreme Court explained that "[i]t is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." 392 U.S. 1, 16 (1968). The Court applied this holding to uses of deadly force in *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth

Hon. Eric R. Komitee
May 10, 2021

Amendment[.]") (emphasis in original). Thus, a unanimous Supreme Court found a seizure where police placed a roadblock in the path of an automobile, holding that the Fourth Amendment's reasonableness requirement is triggered whenever "there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) (Scalia, J.) (emphasis in original).

The Court then confronted the question of whether a show of authority, without any use of physical force, also constitutes a seizure in *California v. Hodari D.*, 499 U.S. 621, 626 (1991). There, the Court held that because an order to stop that is unaccompanied by physical force and ignored by its target is neither a search nor seizure, it is not governed by the Fourth Amendment. *Id.* at 626. In reaching this conclusion, *Hodari D.* divided efforts by police to stop citizens into two distinct categories: (1) those based on the application of physical force to the individual's body, which are always seizures; and (2) those based on a mere "show of authority," such as an order to stop, which become a seizure only if the individual actually submits to the authority and stops. As the Court explained, "[a]n arrest requires either physical force (as described above) or, where that is absent, submission to the assertion of authority." *Id.* (emphasis in original). With respect to physical force, the Court explained, "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Id.*

The sole authority defendant Santana offers is *Torres v. Madrid*. But that case provides no support for his position and merely applied *Hodari D.* to physical force that fails to terminate the target's movement. 141 S. Ct. 989, 996 (2021) ("The common law rule identified in *Hodari D.*—that the application of force gives rise to an arrest, even if the officer does not secure control over the arrestee—achieved recognition to such an extent that English lawyers could confidently (and accurately) proclaim that all the authorities, from the earliest time to the present, establish that a corporal touch is sufficient to constitute an arrest, even though the defendant do not submit.") (citations, quotation marks and brackets omitted). Moreover, under the appropriate objective analysis, there can be no question that Mr. Santana's purposeful shooting of plaintiff manifested an intent to restrain him. *Id.* at 998 ("[T]he appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain, for we rarely probe the subjective motivations of police officers in the Fourth Amendment context.…While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain. A tap on the shoulder to get one's attention will rarely exhibit such an intent.") (emphasis in original) (citations omitted).

It is also irrelevant to the Fourth Amendment analysis whether Mr. Santana went to work that day with the intention of arresting Mr. Diaz Cruz or some third party. *See, e.g., Davenport v. Borough of Homestead*, 13 CV 250 (DSC), 2016 WL 5661733, *14-15 (W.D. Pa. Sept. 30, 2016), *reversed on other grounds*, 870 F.3d 273, 279 (3d Cir. 2017) ("If…the officer fires his gun directly at the innocent bystander…then a Fourth Amendment seizure has

2

Hon. Eric R. Komitee
May 10, 2021

occurred."); *Martien v. City of Schenectady*, 04 CV 679 (FJS) (RFT), 2006 WL 1555565, *2 (N.D.N.Y. June 2, 2006) ("The Court notes that, in situations such as this one, where 'the plaintiff [was] not…the actual target of the arrest, the rule is not diminished – Fourth Amendment analysis still governs.'") (citations omitted) (collecting cases); *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 383 (D. Conn. 2009) ("Courts have applied a Fourth Amendment analysis in situations where the police, while seizing another individual, intentionally used force against a bystander.") (citations omitted) (collecting cases).

### This 'Run of the Mill' Excessive Force Case Does Not Present a New *Bivens* Context

If it should please the Court, this case is like *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, which held fifty years ago that a violation of the Fourth Amendment by "a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. 388, 389 (1971). Both cases arise in Brooklyn and involve the use of allegedly excessive force by federal law enforcement agents during a warrantless seizure of the civil plaintiff lacking probable cause. *Id.* at 390-96; *see, e.g., Powell v. United States*, 19 CV 11351 (AKH), 2020 WL 5126392, *6 (S.D.N.Y. Aug. 31, 2020) ("The similarity of *Bivens* and this dispute is readily apparent[.]"). The *Bivens* Court, indeed, viewed the ability of a plaintiff like Mr. Diaz Cruz to recover damages as foundational. *See Bivens*, 403 U.S. at 397 ("'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.'") (quoting *Marbury v. Madison*, 1 Cranch 137, 163 (1803)).

"[I]t has long been the practice of courts in this Circuit to permit *Bivens* claims arising from the use of excessive force in an arrest." *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 709 (S.D.N.Y. 2020) (quoting *Lehal v. Cent. Falls Det. Facility Corp.*, 13 CV 3923 (DF), 2019 WL 1447261, *11 (S.D.N.Y. Mar. 15, 2019)). While the Supreme Court has discouraged the creation of new *Bivens* remedies, the Court has at the same time explicitly endorsed claims like this one. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57 (2017) ("[I]t must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose. *Bivens* does vindicate the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward. The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere."); *see also Bueno Diaz*, 442 F. Supp. 3d at 709, n.2 (collecting post-*Abassi* Second Circuit cases permitting excessive force *Bivens* claims).[1]

---

[1] Plaintiff respectfully notes that he also intends to oppose Mr. Santana's anticipated stay application as lacking good cause. *See Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006) ("The mere filing of a motion to dismiss does not constitute 'good cause' for the issuance of a stay.") (citations omitted).

Hon. Eric R. Komitee
May 10, 2021

      Thank you for your attention to this matter.

                                   Respectfully submitted,

                                   Gabriel P. Harvis

cc:     Defense Counsel