# Exhibit A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

ERICK DIAZ CRUZ,

*Plaintiff,*

- against -

UNITED STATES OF AMERICA; and HENRY V. SANTANA, Officer of U.S. Immigration and Customs Enforcement, et al.,

*Defendants.*

---

**No. 20 Civ. 891 (EK) (SJB)**

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HENRY V. SANTANA'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

---

### SCHLAM STONE & DOLAN LLP

26 Broadway, 19th Floor
New York, New York 10004
Tel.:  (212) 344-5400
Fax:  (212) 344-7677

*Attorneys for Defendant Henry V. Santana*

June 21, 2021

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

Factual And Procedural Background ................................................................................... 2

    A.    The Allegations Of The Complaint ......................................................................... 2

    B.    Relevant Procedural History .................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.    The Complaint Fails To State A *Bivens* Claim Under The Fourth Or Fifth Amendments. 4

    A.    Legal Standards – Motion To Dismiss For Failure To State A Claim .................... 4

    B.    The Supreme Court Has Substantially Limited The Availability Of A *Bivens* Remedy ................................................................................................................... 4

    C.    The Context Presented Here Is "Different In A Meaningful Way" From *Bivens*, *Davis*, And *Carlson* ................................................................................................. 5

        1.    The Factual Context Of This Case Is Patently Different From *Bivens, Davis,* and *Carlson* ................................................................................. 6

        2.    The Constitutional Right At Issue Is Different ........................................ 7

        3.    This Case Involves A Different Type Of Federal Officer Enforcing A Different Body Of Law ........................................................................... 10

        4.    The Defendant Operated Under A Different Legal Mandate .................. 12

    D.    The Court Should Not Extend *Bivens* To The Facts Of This Case Because Special Factors Counsel Hesitation ................................................................................... 12

        1.    The FTCA Provides An Alternative, Existing Process To Protect Plaintiff's Interest ................................................................................. 13

        2.    Extending *Bivens* To The Context Of Immigration Enforcement And A Foreign Plaintiff Poses Separation Of Powers And Policy Concerns ....... 15

        3.    The Unlikelihood Of A Cognizable Violation Of The Fourth Or Fifth Amendment Counsels Against Extending *Bivens* In This Case .............. 17

II.    The Complaint Fails To State A Fourth Or Fifth Amendment Claim For Excessive Force For Additional And Independent Reasons ........................................................................ 17

    A.    The Complaint Fails To State A Fourth Amendment Claim Because There Was No Seizure Of Plaintiff ................................................................................................. 17

        1.    *Torres v. Madrid* And Seizures By Use Of Force .................................... 18

2.  Under Any View Of The Complaint Mr. Santana Manifested No Intent To Restrain Plaintiff ................................................................................................... 20

B.  The Complaint Fails To State A Substantive Due Process Claim Because A Law Enforcement Officer's Shooting Of A Person Who Inserts Himself Into The Officer's Struggle With A Fleeing Target Does Not Shock The Conscience ...... 21

III.  The Court Should Stay Discovery Pending Resolution of This Motion to Dismiss......... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Abdoulaye v. Cimaglia,*
No. 15-cv-4921 (PKC), 2018 WL 1890488 (S.D.N.Y. Mar. 30, 2018) ................ 9, 13-14, 14

*Abujayyab v. City of New York,*
No. 15 Civ. 10080 (NRB), 2018 WL 3978122 (S.D.N.Y. Aug. 20, 2018) ........................... 19

*Arar v. Ashcroft,*
585 F.3d 559 (2d Cir. 2009) .................................................................................. 5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 4

*Bivens v. Six Unknown Narcotics Agents,*
403 U.S. 388 (1971) ................................................................................... *passim*

*Bogart v. City of New York,*
No. 13 Civ. 1017 (NRB), 2016 WL 4939075 (S.D.N.Y. Sept. 6, 2016) ........................ 22-23

*Brower v. County of Inyo,*
489 U.S. 593 (1989) ..................................................................................... 19, 20

*Bueno Diaz v. Mercurio,*
442 F. Supp. 3d 701 (S.D.N.Y. 2020) ............................................................ *passim*

*California v. Hodari D.,*
499 U.S. 621 (1991) ......................................................................................... 18

*Carlson v. Green,*
446 U.S. 14 (1980) ............................................................................................ 4

*Corr. Servs. Corp. v. Malesko,*
534 U.S. 61 (2001) ............................................................................................ 5

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998) .................................................................................. 21-22, 22

*Davenport v. Borough of Homestead,*
No. 2:13CV250, 2016 WL 5661733 (W.D. Pa. Sept. 30, 2016) .................................... 20

*Davis v. Passman,*
442 U.S. 228 (1979) ................................................................................ 4, 10, 11

*Dodd v.* City of *Norwich,*
827 F.2d 1 (2d Cir. 1987) .................................................................................. 20

*Estate of Jackson v. Rochester,*
705 F. Supp. 779 (W.D.N.Y. 1989) .................................................................... 19

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ................................................. 16

*Giminez v. Law Offices of Hoffman & Hoffman*,
   No. CV-12-0669 (JFB) (ETB), 2012 WL 2861014 (E.D.N.Y. July 11, 2012) .......... 24

*Graham v. Connor*,
   490 U.S. 386 (1989) ................................................. 17-18

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010) ......................................... 4

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ................................................ *passim*

*Lawson v. Rubin*,
   No. 17-CV-6404 (BMC), 2018 WL 4211446 (E.D.N.Y. Mar. 7, 2018) .......... 23

*Lehal v. Central Falls Detention Facility Corporation*,
   No. 13-cv-3923 (DF), 2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019) .......... 9, 10, 12

*Martien v. City of Schenectady*,
   No. 1:04-CV-679 (FJS/RFT), 2006 WL 1555565 (N.D.N.Y. June 2, 2006) .......... 20

*Martinez v. D'Agata*,
   No. 16 CV 44 (VB), 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) .......... 8, 10, 12

*Matican v. City of New York*,
   524 F.3d 151 (2d Cir. 2008) ......................................... 22

*Medeiros v. O'Connell*,
   150 F.3d 164 (2d Cir. 1998) ......................................... 21

*Morgan v. Shivers*,
   1:14-cv-7921 (GHW), 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018) .......... 10, 14

*New York v. Pennsylvania Higher Educ. Assist. Agency*,
   No. 19 Civ. 9155 (ER), 2020 WL 605944 (S.D.N.Y. Feb. 7, 2020) .......... 25

*Niv v. Hilton Hotels Corp.*,
   No. 06 Civ. 7839 (PKL), 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007) .......... 23, 24

*Ojo v. United States*,
   No. 16 CV 4112 (MKB) (LB), 2019 WL 3852391 (E.D.N.Y. Aug. 15, 2019) .......... 14

*Oliveras v. United States Dep't of Homeland Sec. Investigations Special Response Team Officer Robert Basile*,
   440 F. Supp. 3d 365 (S.D.N.Y. 2020) .......... 6, 7, 14, 17

*Prado v. Perez*,
   451 F. Supp. 3d 306 (S.D.N.Y. 2020) .......... 10, 11

iv

*Ramirez v. Tatum*,
No. 17 Civ. 7801 (LGS), 2018 WL 6655600 (S.D.N.Y. Dec. 19, 2018) .............................. 14

*Reno v. Flores*,
507 U.S. 292 (1993) .................................................................................................. 15-16

*Rivera v. Samilo*,
370 F. Supp. 3d 362 (E.D.N.Y. 2019) ........................................................................ *passim*

*Rodriguez v. Phillips*,
66 F.3d 470 (2d Cir. 1995) ............................................................................................... 21

*Sanford v. Bruno*,
17-cv-5132 (BMC), 2018 WL 2198759 (E.D.N.Y. May 14, 2018) ..................................... 14

*Shi Liang Lin v. United States Dep't of Justice*,
494 F.3d 296 (2d Cir. 2007) (en banc) ............................................................................. 16

*Sosa v. Bustos*,
No. 17 Civ.417 (ER), 2020 WL 1940550 (S.D.N.Y. Apr. 22, 2020) .......................... 8, 12, 13

*Style v. Deputy United States Marshal Adam Mackey*,
No. 17-cv-1691 (ENV) (SJB), 2020 WL 3055319 (E.D.N.Y. May 15, 2020) ....... 8, 10, 12, 14

*Torres v. Madrid*,
141 S. Ct. 989 (2021) ............................................................................................... 18, 19

*Tun-Cos v. Perotte*,
922 F.3d 514 (4th Cir. 2019) ..................................................................................... 11, 16

*Turkmen v. Ashcroft*,
No. 02-CV-2307 (DLI) (SMG), 2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018) ............. 13, 14

*United States v. County of Nassau*,
188 F.R.D. 187 (E.D.N.Y. 1999) ..................................................................................... 23

*Valentini v. Group Health Inc.*,
No. 20 Civ. 9526 (JPC), 2021 WL 861275 (S.D.N.Y. Mar. 8, 2021) .................................. 23

*Velez v. Levy*,
401 F.3d 75 (2d Cir. 2005) .............................................................................................. 21

*Zainc v. City of Waterbury*,
603 F. Supp. 2d 368 (D. Conn. 2009) ............................................................................... 20

*Ziglar v. Abassi*,
137 S. Ct. 1843 (2017) ............................................................................................. *passim*

**Statutes**

28 U.S.C. § 1346 ......................................................................................................... 3

28 U.S.C. § 2401(b) .................................................................................................... 3

28 U.S.C. §§ 2671-2680 ............................................................................................. 3

28 U.S.C. § 2680 ...................................................................................................... 13

42 U.S.C. § 1983 ...................................................................................................... 18

Defendant Henry V. Santana respectfully submits this memorandum of law in support of his motion to dismiss the Second Amended Complaint (the "Complaint") of Plaintiff Erick Diaz Cruz ("Diaz Cruz" or "Plaintiff") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff brings *Bivens* claims under the Fourth and Fifth Amendments to recover for injuries resulting from his intervention in a struggle between Mr. Santana, a federal immigration officer, and a target attempting to flee a lawful arrest. Plaintiff approached the scene and attempted to loosen Mr. Santana's grip on the target by pummeling Santana on the arm and face, leading to Mr. Santana firing his gun at Plaintiff. Although Plaintiff omits from the Complaint his own attack on Mr. Santana, the false depiction of Plaintiff as an innocent bystander does not affect the grounds for dismissal. Based strictly on the factual allegations of the Complaint, despite Plaintiff's claimed serious injuries *Bivens* does not afford a remedy as a matter of law for multiple reasons.

First, the Supreme Court's *Bivens* doctrine forbids the creation of a new *Bivens* remedy unless a strict two-step standard is met, and this case fails to meet the standard. Under the test's first prong, the court asks whether the claim presents a new *Bivens* context. If the answer is yes, the court asks whether special factors counsel hesitation in creating a new cause of action where Congress has declined to do so.

Plaintiff's excessive force claim manifestly presents a new *Bivens* context for multiple substantial reasons: it presents an entirely different factual context, invokes different Fourth and Fifth Amendment interests, and seeks to hold liable a different category of federal officer operating under a different legal regime than any of the Supreme Court's existing *Bivens* precedents. Moving necessarily to the second prong, special factors counsel hesitation given that Plaintiff has an alternative remedy in the Federal Tort Claims Act; the immigration context and Plaintiff's status as a foreign national raise separation of powers and policy concerns in having the judiciary create

1

a new remedy; and it is unlikely that Plaintiff's allegations give rise to a Fourth or Fifth Amendment claim in any event.  That is because Plaintiff's factual allegations make clear he was not seized within the meaning of the Fourth Amendment and there is no substantive due process violation in Mr. Santana firing his gun at Plaintiff during a struggle with a suspect at which Plaintiff intentionally presented himself.  Accordingly, Plaintiff's *Bivens* claims should be dismissed in their entirety for failure to state a claim.

Finally, in light of the strength of Mr. Santana's dismissal arguments and lack of prejudice to Plaintiff, good cause exists to grant a stay of discovery pending resolution of this motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Allegations Of The Complaint

Plaintiff is a Mexican national who lives in Mexico.  Cmplt. ¶ 10.  On February 6, 2020, he was visiting his mother in Brooklyn when he awoke to hear banging on the door and shouting and screaming from the street.  *Id*. ¶¶ 2, 10, 21, 22.  When he left the house, Plaintiff saw Mr. Santana, an Immigration and Customs Enforcement ("ICE") officer, and another ICE agent "engaged in a struggle" in the street with Gaspar Avendaño-Hernandez, Plaintiff's mother's "long-time partner." *Id.* ¶¶ 2, 12, 13.  Plaintiff saw the agents "wrestling with Mr. Avendaño-Hernandez, repeatedly using a taser on him, and attempting to place him in handcuffs and move him towards their vehicle." *Id.* ¶ 29.

When Avendaño-Hernandez ran away from the ICE agents, Mr. Santana ran after him and tried to pull him back toward the street. *Id.* ¶ 30.  Avendaño-Hernandez grabbed onto a pole next to a staircase leading to the house. *Id.* ¶¶ 31-32.  Plaintiff walked toward Avendaño-Hernandez and Mr. Santana and stood on the steps, placing himself between Avendaño-Hernandez and the house and coming within four feet of Mr. Santana. *Id.* ¶¶ 33-34, 36.  According to the Complaint, Plaintiff did nothing threatening, and Mr. Santana shot him without warning. *Id.* ¶¶ 40-41, 45, 48.

The Complaint knowingly omits any mention of Plaintiff's continuous pummeling of Mr. Santana, with his fist, on Mr. Santana's arm and face, in an effort to loosen Mr. Santana's grip on Avendaño-Hernandez.  Plaintiff suffered fractures to his face and left wrist and hand and other injuries from the shooting, and has undergone multiple surgeries and other treatments.  *Id*. ¶¶ 56-61, 68-69, 73.

Based on these allegations, Plaintiff asserts two *Bivens* claims against Mr. Santana, for excessive force in alleged violation of "the Fourth Amendment's prohibition against seizures with excessive and unreasonable force" (Claim One, ¶¶ 77-80), and for violation of "the substantive due process component of the Fifth Amendment" (Claim Two, ¶¶ 81-84).  Based on the same alleged facts, the Complaint asserts a claim against the United States (Claim Three, ¶¶ 85-86) under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2401(b), 2671-2680.  Plaintiff seeks a declaratory judgment, compensatory and punitive damages, and attorneys' fees.

### B.    Relevant Procedural History

Plaintiff brought this action on February 19, 2020.  (Dkt. no. 1).  Before serving Mr. Santana, Plaintiff filed a First Amended Complaint on May 7, 2020 (dkt. no. 10), which Mr. Santana timely answered on September 21, 2020.  (Dkt. no. 20).  By order dated December 11, 2020, Magistrate Judge Bulsara set a case management schedule establishing deadlines for, among other things, completion of discovery and amendment of the complaint.  (Dkt. entry of Dec. 11, 2020).  On April 20, 2021, Plaintiff filed his Second Amended Complaint adding the FTCA claim against the United States based on the same allegations giving rise to the *Bivens* claims against Mr. Santana (Dkt. no. 29), and the government's response to the Complaint is due on June 25, 2021.  (Dkt. no. 34). Following the submission of pre-motion letters in May 2021 (dkt. nos. 35 and 36), the Court set a briefing schedule for this motion.  (Dkt. Entry of May 20, 2021).

<u>**ARGUMENT**</u>

**I. THE COMPLAINT FAILS TO STATE A *BIVENS* CLAIM UNDER THE FOURTH OR FIFTH AMENDMENTS**

 **A.**   **Legal Standards – Motion To Dismiss For Failure To State A Claim**

To survive a motion to dismiss, a complaint must "state a clam to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court's task is to "determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

 **B.**   **The Supreme Court Has Substantially Limited The Availability Of A *Bivens* Remedy**

In *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court created "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abassi*, 137 S. Ct. 1843 (2017). "Since then, the Supreme Court has recognized *Bivens* claims in only two other circumstances: (1) under the Fifth Amendment's Due Process Clause for gender discrimination against a congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979), and (2) under the Eighth Amendment's prohibition on cruel and unusual punishment against prison officials for failure to treat an inmate's asthma which led to his death, *Carlson v. Green*, 446 U.S. 14 (1980)." *Rivera v. Samilo*, 370 F. Supp. 3d 362, 366 (E.D.N.Y. 2019) (parallel cites omitted). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1843.

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id.* at 1857; *see also Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (We "have gone so far as to observe that if the Court's three Bivens cases had been decided today, it is doubtful that we would have reached the same result" and "for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under Bivens.") (internal quotations and alterations omitted); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (Supreme Court has "consistently refused to extend Bivens liability to any new context or new category of defendants"); *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) ("Since *Carlson* in 1980, the Supreme Court has declined to extend the *Bivens* remedy in any new  direction at all.").

Under *Ziglar* "a rigorous two-step inquiry" determines whether the court should "imply a *Bivens* cause of action in a new context or against a new category of defendants."  *Rivera*, 370 F. Supp. 3d at 367.  First, the court determines whether the case is "different in a meaningful way" from the Supreme Court's three prior *Bivens* cases.  *Ziglar*, 137 S. Ct. at 1859.  If it is, then the court may not create a new *Bivens* remedy "if there are special factors counselling hesitation in the absence of affirmative action by Congress."  *Id.* at 1857 (internal quotation marks omitted).  As shown below, this case differs meaningfully from the Court's three *Bivens* cases and special factors counsel against creating a new *Bivens* remedy.  The Complaint should therefore be dismissed.

## C.     The Context Presented Here Is "Different In A Meaningful Way" From *Bivens*, *Davis*, And *Carlson*

At the first step of the inquiry, the court evaluates whether the case presents a new context. A context is new if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."  *Ziglar*, 137 S. Ct. at 1859.  *Ziglar* provided a nonexclusive list of examples of "differences that are meaningful":

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or

> specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.*

"[E]ven a modest extension is still an extension," and the new context inquiry may be "easily satisfied" by "small" differences. *Id.* at 1864, 1866; *see also Rivera*, 370 F. Supp. 3d at 367 (*Ziglar* "made it clear that the only recognized implied rights of action are the narrow situations presented in *Bivens, Davis, and Carlson*."); *Oliveras v. United States Dep't of Homeland Sec. Investigations Special Response Team Officer Robert Basile*, 440 F. Supp. 3d 365, 370 (S.D.N.Y. 2020) ("[E]ven if the Second Circuit has previously recognized a *Bivens* remedy that goes beyond the Supreme Court's trinity, this Court cannot simply rely on that precedent.").

As detailed below, the differences between this case and the three recognized *Bivens* actions are substantial: (1) the factual context here is patently different than any of the three recognized cases; (2) the constitutional right at issue is different; (3) this case involves a different type of federal officer, enforcing a different body of law; and (4) the federal officer here was operating under a different legal mandate.

### 1.     The Factual Context Of This Case Is Patently Different From *Bivens, Davis,* and *Carlson*

To determine whether the context is new, the Court "must look beyond the constitutional provisions invoked." *Hernandez*, 140 S. Ct. at 744. Instead, the inquiry focuses on the specific facts of the case. *See Rivera*, 370 F. Supp. 3d at 368-69 ("[S]imply because a plaintiff asserts the same constitutional right as one of the three recognized cases . . . does not mean the case does not present a new context.").

In *Ziglar*, the Supreme Court described the factual context of *Bivens*, *Davis*, and *Carlson* as: "[1] a claim against FBI agents for handcuffing a man in his own home without a warrant [*Bivens*]; [2] a claim against a Congressman for firing his female secretary [*Davis*]; and [3] a claim against prison officials for failure to treat an inmate's asthma [*Carlson*]." *Ziglar*, 137 S. Ct. at 1860; *see also Hernandez*, 140 S. Ct. at 744 (*Bivens* concerned an "allegedly unconstitutional arrest and search").

This case, by contrast, involves a claim against an ICE agent for shooting a foreign national who claims to be a bystander to an immigration enforcement action.  Unlike *Bivens*, Plaintiff is not the arrestee but a witness to an attempted arrest of someone else; is a foreign national who was in the U.S. on vacation; and the claim does not involve a search or an arrest.  These facts bear little resemblance to the three recognized *Bivens* cases.  *See Hernandez*, 140 S. Ct. at 744 (cross-border shooting of foreign national by a U.S. Border Patrol agent presented a new *Bivens* context); *see also Oliveras*, 440 F. Supp. 3d at 371-72 (finding new context and granting motion to dismiss where "[t]he only similarities between Plaintiff's claim and that presented in Bivens are that Defendants are federal agents and that Plaintiff alleges a violation of the Fourth Amendment").

### 2.    The Constitutional Right At Issue Is Different

While the Plaintiff in this case invokes the Fourth and Fifth Amendments, as did the plaintiffs in *Bivens* and *Davis*, respectively, the constitutional right at issue here is different than in either of those cases. Such differences are meaningful as the Supreme Court refuses "to extend *Bivens* to contexts beyond the specific clauses of the specific amendments for which a cause of action had been implied, or even to other classes of defendants facing liability under those same clauses." *Rivera*, 370 F. Supp. 3d at 368-69 (collecting cases).

In *Bivens*, the specific constitutional right at issue was plaintiff's privacy right under the Fourth Amendment.  *Bivens*, 403 U.S. at 390 ("[T]he rights that [Bivens] asserts [are] primarily

rights of privacy . . ."). Here, unlike in *Bivens*, there is no privacy right issue—instead, the right at issue is the right to be free from excessive force under the Fourth or Fifth Amendment.

Following *Ziglar*, the majority of courts within the Eastern and Southern Districts have determined that where, as here, a Fourth Amendment *Bivens* claim presents an excessive force rather than a privacy issue, it presents a new context. In *Rivera*, for example, the court granted defendant's motion to dismiss, explaining that unlike in *Bivens*, "Plaintiff's claim is not for a violation of his privacy rights, or for a warrantless invasion of his home and the unreasonable search and seizure of his property. Instead, Plaintiff's claim arises from the force allegedly applied in making a lawful street arrest." 370 F. Supp. 3d at 369. In *Style v. Deputy United States Marshal Adam Mackey*, No. 17-cv-1691 (ENV) (SJB), 2020 WL 3055319 (E.D.N.Y. May 15, 2020), the court concluded that the case presented "a new context from the narrow circumstances in *Bivens*" because, "[m]ost critically, although [Plaintiff's] excessive force claim arises under the Fourth Amendment, it invokes a materially distinct constitutional interest from the privacy rights at issue in *Bivens*." *Id.* at *4; *see also Sosa v. Bustos*, No. 17 Civ.417 (ER), 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020) (same); *Martinez v. D'Agata*, No. 16 CV 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (same).

The two post-*Ziglar* decisions representing the minority approach in this Circuit—both from the Southern District—are unpersuasive.[1] In *Bueno Diaz*, the court, despite *Ziglar*'s guidance to the contrary, interpreted *Bivens* in broad and expansive terms to allow an "arrestee to recover

---

[1] These two cases—*Bueno Diaz* and *Lehal*—are in any event distinguishable for reasons explained below. In particular, unlike this case, neither *Bueno Diaz* nor *Lehal* involved the enforcement of immigration law, which involves policy and separation of powers concerns markedly distinct from *Bivens*. Indeed, *Bueno Diaz* was quite similar to *Bivens* in that, unlike this case, it concerned DEA agents enforcing drug laws. *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020).

for '*any* injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment.'"
*Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020) (citing *Bivens*, 403 U.S. at
397).  Thus, according to the *Bueno Diaz* court, a plaintiff need only invoke the Fourth Amendment
and allege an injury to maintain a claim under *Bivens*—a notion contrary to the Supreme Court's
consistent refusal to extend *Bivens* based solely on the constitutional amendment the plaintiff
invokes.  *See Rivera*, 370 F. Supp. 3d at 368-69 (collecting cases).

In *Lehal v. Central Falls Detention Facility Corporation*, the court acknowledged that it
"is certainly true that the mere invocation of the Fourth Amendment must now be considered
insufficient to place a claim within the context of the *Bivens* decision," but nevertheless found that
a Fourth Amendment claim for excessive force did not present a new context.  No. 13-cv-3923
(DF), 2019 WL 1447261, at *11-12 (S.D.N.Y. Mar. 15, 2019).  The court's reasoning was flawed
for two reasons.  *First*, it mischaracterized *Bivens* as an excessive force case akin to one in which,
as here, a plaintiff alleges physical injury.  The plaintiff in *Bivens*, however, did not allege physical
injury—instead he "claimed to have suffered great humiliation, embarrassment, and mental
suffering as a result of the agents' unlawful conduct."  *Bivens*, 403 U.S. at 389.  *Second*, the court
primarily relied on pre-*Ziglar* decisions within the Second Circuit and, to the extent it cited post-
*Ziglar* cases in support of its conclusion, they were sparse and exclusively from outside the Circuit.

With respect to Plaintiff's Fifth Amendment claim for excessive force, the facts and
constitutional right at issue here are entirely unlike *Davis*, which recognized a *Bivens* cause of
action for under the Fifth Amendment's due process clause for gender discrimination arising out
of a Congressman's firing of his female secretary.  *See Abdoulaye v. Cimaglia*, 15-cv-4921 (PKC),
2018 WL 1890488, at *6 (S.D.N.Y. Mar. 30, 2018) ("Even though *Davis* also involved Fifth
Amendment rights, there are obvious meaningful differences between excessive force and gender

9

discrimination claims, the employment and pretrial proceeding contexts, and the legal mandates of a congressperson and a deputy marshal."); *Morgan v. Shivers*, 1:14-cv-7921 (GHW), 2018 WL 618451, at \*5 (S.D.N.Y. Jan. 29, 2018) (holding that excessive force claim brought under Fifth Amendment presents a new context).

**3.    This Case Involves A Different Type Of Federal Officer Enforcing A Different Body Of Law**

This case presents another meaningful difference: while *Bivens* involved DEA agents enforcing criminal law, this case involves an ICE agent enforcing immigration law.  With the exception of one outlier, courts in the Eastern and Southern Districts post-*Ziglar* uniformly hold that where the case involves a different type of officer enforcing a different body of law, such a case presents a new *Bivens* context.  *See Style*, 2020 WL 3055319, at \*4 ("[T]he officers involved in *Bivens* were federal narcotics agents, an investigatory and enforcement force, whereas here, the officers are Deputy U.S. Marshals, a force principally engaged in the protection of federal judicial process and the execution of warrants authorized by a judicial officer"); *Martinez*, 2019 WL 6895436, at \*7 (dismissing *Bivens* claim for excessive force and noting that "the type of officers involved in *Bivens* were DEA agents, whereas here the officers were appointed members of a federal task force"); *compare Bueno Diaz*, 442 F. Supp. 3d at 708 (no new context where "both *Bivens* and this case concern the same type of federal officers*: narcotics officers*"); *Lehal*, 2019 WL 1447261, at \*12 (no new context where officers were Special Duty Marshals "effecting the arrest of criminal subject.").[2]

The outlier within the Eastern and Southern Districts is *Prado v. Perez*, 451 F. Supp. 3d 306, 315 (S.D.N.Y. 2020), a case involving ICE agents, who, like the FBI agents in *Bivens* (but

---

[2] Plaintiff's Fifth Amendment claims are distinguishable on this ground as well as *Davis* involved the actions of a Congressman.  *See Davis*, 442 U.S. 228.

unlike the defendant here) were alleged to have unlawfully conducted a search and seizure inside the plaintiff's home.  The court observed that the facts of the case "differed from the core *Bivens* context only in that the federal agent defendants were employed by ICE rather than by the FBI," and decided that it did not present a new *Bivens* context.  *Id.* at 316.  In the court's view, "the character of the law enforcement officer, without more," cannot "automatically convert[] a plaintiff's claim into a 'new context,' even post-*Abbasi*."  *Id.* at 315.

*Prado* is inapposite because here, there is "more"—much more, as shown in this Point I.  In any event, the *Prado* court's reasoning is unpersuasive.  *First,* despite that the Supreme Court has "consistently refused to extend *Bivens* to any new context or *new category of defendants*," *Ziglar,* 137 S. Ct. at 1857 (internal quotation marks omitted, emphasis added), the *Prado* court extended the remedy to a new category of defendants, namely, ICE agents.  *Second*, in justifying its extension of *Bivens* to other types of federal agents "even post-[*Ziglar*]," the *Prado* court relied exclusively on pre-*Ziglar* cases sustaining *Bivens* actions against other types of federal agents.  *Prado*, 451 F. Supp. 3d at 315.  *Third,* the court did not meaningfully address the policy and separation of powers issues that are unique to the immigration enforcement context, as discussed below, and which differentiate it from criminal law enforcement in a meaningful way.  *Id.*[3]

The Fourth Circuit's decision in *Tun-Cos v. Perotte,* 922 F.3d 514, 524-25 (4th Cir. 2019), declining to extend *Bivens* liability to ICE agents, is more persuasive because it recognizes "the substantively distinct aspects of immigration enforcement" compared to criminal law enforcement.  *Id.* at 524.  "[I]mmigration enforcement is by its nature addressed toward noncitizens which raises a host of considerations and concerns that are simply absent in the majority of traditional law

---

[3] Plaintiff's Fifth Amendment claims are distinguishable on this ground as well as *Davis* involved the actions of a Congressman.  *See generally Davis*, 442 U.S. 228.

enforcement contexts." *Id.* Even though Plaintiff was not the target of ICE's immigration enforcement operations and is a foreign national rather than an immigrant, making ICE officers liable on excessive force claims arising out of enforcement operations would raise the same concerns identified by the Fourth Circuit.

### 4. The Defendant Operated Under A Different Legal Mandate

While *Bivens* involved a warrantless arrest and search of a target within his home without probable cause, this case involves a claim of excessive force to a third-party who was a witness to—not the target of—a lawful arrest of the target outside of his home. Thus, the defendant here was operating under a "different legal mandate" than were the officers in *Bivens*.

The majority of post-*Ziglar* decisions from the Eastern and Southern Districts hold that where, as here, a purported *Bivens* claim does not involve a warrantless arrest inside the target's home, it presents a new context. *See Rivera*, 370 F. Supp. 3d at 369 ("Plaintiff's arrest was made upon probable cause after a valid vehicle search conducted with probable cause" whereas "the officers in *Bivens* arrested the plaintiff in his home without a warrant and without probable cause."); *Style*, 2020 WL 3055319, at *4 ("Further counterpointing this case against *Bivens* is defendants' arrest of Style pursuant to a valid arrest warrant."); *see also Sosa*, 2020 U.S. Dist. LEXIS 71362, at *12-13, 2020 WL 1940550, at *4 (same); *Martinez*, 2019 WL 6895436, at *7 (same), *but see Bueno Diaz,* 442 F. Supp. 3d at 708 (holding that arresting officers lack of warrant an arrest outside of the home are not meaningful factors); *Lehal*, 2019 WL 1447261, at *11 (same).

For the reasons set forth above, this case presents a new *Bivens* context.

### D. The Court Should Not Extend *Bivens* To The Facts Of This Case Because Special Factors Counsel Hesitation

If a case presents a new *Bivens* context, the court moves to the second part of the inquiry, to consider whether "there are special factors counselling hesitation in the absence of affirmative

action by Congress." *Ziglar*, 134 S. Ct. at 1847.  The threshold for concluding that a factor counsels hesitation "is remarkably low. . . . Hesitation is a pause, not a full stop." *Turkmen v. Ashcroft*, No. 02-CV-2307 (DLI) (SMG), 2018 WL 4026734, at *9 (E.D.N.Y. Aug. 13, 2018) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009)).  As shown below, the following factors here each independently counsel hesitation: (1) the availability of an alternative process to protect plaintiff's interest—*i.e.*, the FTCA; (2) separation of powers and policy concerns inherent in the context of immigration enforcement and claims by a foreign national; and (3) the likelihood that Plaintiff has not actually alleged a violation of the Fourth or Fifth Amendment.

### 1. The FTCA Provides An Alternative, Existing Process To Protect Plaintiff's Interest

"[I]f Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar,* 134 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).  Congress has created such a process here.  The FTCA provides a remedy for claims arising out of torts such as "assault" and "battery" with "regard to acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).  Indeed, Plaintiff has asserted an FTCA claim.  Therefore, this Court should not create a "new and freestanding remedy in damages." *Ziglar,* 134 S. Ct. at 1858.

Although the Supreme Court in *Carlson* suggested that the FTCA and *Bivens* were "parallel" and "complementary," that decision has been cabined, and "might have been different if [it] were decided today." *Id.* at 1856; *see also Sosa*, 2020 WL 1940550, at *4 (under *Carlson*, the FTCA was once considered "parallel" and "complementary" to a Bivens remedy, but "that is no longer the case" given Supreme Court's subsequent decisions); *Abdoulaye*, 2018 WL 1890488,

13

at *7 (same).  Under the current approach, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Ziglar*, 137 S. Ct. at 1863.

Thus, following *Ziglar*, every court in the Eastern District to reach the issue holds that the availability of the FTCA in the context of an excessive force claim counsels hesitation. *See Turkmen*, 2018 WL 4026734, at *9 ("Because plaintiffs could have brought their claims under the FTCA and been awarded damages for their injuries if they prevailed, Ziglar counsels that their Bivens claims should be dismissed."); *Rivera*, 370 F. Supp. 3d at 369 (same); *Style*, 2020 WL 3055319, at *4 (same).[4]

The overwhelming majority of courts in the Southern District addressing excessive force claims against federal officers concur.  *See Oliveras*, 440 F. Supp. 3d at 373, 2020 ("[T]he Court finds that the existence of the FTCA as an alternative remedy qualifies as a special factor that counsels hesitation in extending Bivens to cover Plaintiff's claims."); *Ramirez v. Tatum*, 17 Civ. 7801 (LGS), 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018) (same); *Abdoulaye*, 2018 WL 1890488, at *7 (same); *Morgan*, 2018 U.S. Dist. 14235, at *6, 2018 WL 618451 (same).

*Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701 (S.D.N.Y. 2020)—the lone post-*Ziglar* excessive force case in the Southern District to hold that the availability of the FTCA does not counsel hesitation—is simply at odds with *Ziglar*.  While acknowledging the "notable change in the Court's approach to recognizing implied causes of action," Judge Torres said she would follow *Carlson* because the "Supreme Court has not *specifically* called into question its prior analysis

---

[4] "It matters not whether plaintiff's alternative claims will succeed."  *Ojo v. United States*, 16 CV 4112 (MKB) (LB), 2019 WL 3852391, at *14 (E.D.N.Y. Aug. 15, 2019); *Sanford v. Bruno*, 17-cv-5132 (BMC), 2018 WL 2198759, at *7 (E.D.N.Y. May 14, 2018) (finding the remedies that existed "to address plaintiff's situation here are thus adequate for purposes of determining whether to imply a Bivens remedy—even though those remedies did not work in this instance").

regarding the FTCA's availability." *Id.* at 711 (emphasis added). But the clear import of *Ziglar* (and *Hernandez v. Mesa*) is otherwise as shown above. No other court in the Southern or Eastern District has required such an exacting degree of specificity following *Ziglar* to appreciate that the availability of the FTCA now counsels hesitation.

Similarly unconvincing, the *Bueno Diaz* court also posited that the availability of the FTCA does not counsel hesitation because the FTCA is "an insufficient protector of the citizens' constitutional rights." *Id*. at 710 (internal quotations omitted). The court explained that whereas *Bivens* remedies "vindicate violations of constitutional rights by federal employees," the FTCA permits "damages for intentional torts inflicted by federal law enforcement officers." *Id*. But this distinction, whatever its merits may be, does not bear on the essential consideration of the special factors analysis—*i.e.*, whether the "Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1858. The *Bueno Diaz* court is at odds with *Ziglar* in concluding that it, as opposed to Congress, is "well suited" to decide how and to what extent such constitutional remedies should be provided. "[W]hen a court recognizes an implied claim for damages on the ground that dong so furthers the 'purpose' of the law, the court risks arrogating legislative power." *Hernandez*, 140 S. Ct. at 741.

### 2.    Extending *Bivens* To The Context Of Immigration Enforcement And A Foreign Plaintiff Poses Separation Of Powers And Policy Concerns

Another "special factor" counselling hesitation is that this case, given that it involves immigration enforcement and touches on international diplomacy, implicates separation of powers concerns. The Supreme Court in *Reno v. Flores* observed that the "federal government's relationship with alien visitors is so heavily entrusted to Congressional oversight that there is no other 'conceivable subject [over which] the legislative power of Congress is more complete.'" 507

U.S. 292, 305 (1993) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (internal quotation marks omitted)); *Shi Liang Lin v. United States Dep't of Justice*, 494 F.3d 296, 323 (2d Cir. 2007) (Katzmann, J., concurring in the judgment) ("[I]mmigration. . . ha[s] consistently been on Congress's radar . . . and Congress has repeatedly legislated in this area.") (en banc).

The Fourth Circuit's decision in *Tun-Cos v. Perrotte* is again instructive.  The court explained that "immigration enforcement is 'a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere.'"  922 F.3d 514, 526 (4th Cir. 2019) (quoting *Ziglar*, 137 S. Ct. at 1858).  The court observed that enforcement of immigration laws implicates broad policy concerns of the Executive Branch.  *See id.* at 524-25.  That is true here even though Plaintiff does not suggest he is a would-be immigrant, because allowing a *Bivens* claim would subject to suit officers that enforce the immigration laws.  "Such enforcement has the natural tendency to affect diplomacy, foreign policy, and the security of the nation, which counsel hesitation in extending *Bivens*."  *Id.*

The fact that Plaintiff is a foreign national also implicates separation of powers and policy concerns.  In *Hernandez v. Mesa*, the Supreme Court declined to create a new *Bivens* remedy arising out of a border agent's cross-border shooting of a Mexican national.  *See* 140 S. Ct. at 739, 749.  After concluding that the case raised a new *Bivens* context, the Court held that special factors counseled hesitation in creating a new remedy because, among other things, the matter implicated foreign relations, an area entrusted to the political branches.  *See id.* at 744-45.

While Plaintiff was shot in the United States rather than across an international border, the shooting has the potential to implicate diplomacy between the United States and Mexico.  In its manual "Consular Notification and Access," the State Department "encourages U.S. officials to consider notifying consular officers as a matter of courtesy" if a foreign national suffers a

serious injury.[5]  Creation of a *Bivens* remedy thus has the potential to interfere with a diplomatic handing of the matter.

### 3.     The Unlikelihood Of A Cognizable Violation Of The Fourth Or Fifth Amendment Counsels Against Extending *Bivens* In This Case

Finally, because it is unlikely that plaintiff has stated a Fourth or Fifth Amendment violation as shown in Point II below, that too counsels hesitation in extending *Bivens* to the facts of this case.  *See Oliveras*, 440 F. Supp. 3d at 374 ("Moreover, even if the existence of the FTCA as an alternative remedy were not sufficient to counsel hesitation, the Court would nevertheless have ample reason to hesitate.  As Defendants have noted it is unlikely that Plaintiff has actually alleged a violation of the Fourth Amendment.").

Accordingly, the facts of this case present a new *Bivens* context and special factors counsel against extending a *Bivens* remedy.  The Complaint should therefore be dismissed.

## II.     THE COMPLAINT FAILS TO STATE A FOURTH OR FIFTH AMENDMENT CLAIM FOR EXCESSIVE FORCE FOR ADDITIONAL AND INDEPENDENT REASONS

Even if the court were to create a new *Bivens* remedy contrary to the teachings of *Ziglar* and *Hernandez*, the Complaint fails to state a claim under either the Fourth or Fifth Amendments for additional and independent reasons.

### A.     The Complaint Fails To State A Fourth Amendment Claim Because There Was No Seizure Of Plaintiff

An excessive force claim arising "in the context of an arrest or investigatory stop of a free citizen," invokes "the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."  *Graham v.*

---

[5]  *See* https://travel.state.gov/content/dam/travel/CNAtrainingresources/ CNA%20Manual%205th%20Edition_September%202018.pdf, at p. 10 (last visited 6/20/21).

*Connor*, 490 U.S. 386, 394 (1989) (ellipsis in original).  Thus, to state an excessive force claim plaintiff must prove he was seized within the meaning of the Fourth Amendment.

      **1.**    ***Torres v. Madrid* And Seizures By Use Of Force**

In *Torres v. Madrid*, 141 S. Ct. 989 (2021), the Supreme Court clarified that distinct analyses apply to "seizures by *control* and seizures by *force*."  *Id.* at 1001 (emphases in original). Torres involved an alleged seizure by force:  for her excessive force claim under 42 U.S.C. § 1983, the plaintiff claimed she was seized when state police officers shot her after she fled from them by car.  Although the bullets hit Torres, the shooting did not stop her.  She continued her drive to another town and was eventually taken to a hospital, where she was arrested the next day.  *See id*. at 994.  The question presented was whether the officers' use of physical force constituted a seizure even though it did not stop Torres' flight.  *See id*. at 995.

The Court held that the shooting constituted a seizure because it applied physical force that manifested an intent to restrain the plaintiff:

> We stress, however, that the application of the common law rule [that physical touch gives rise to arrest] does not transform every physical contact between a government employee and a member of the public into a Fourth Amendment seizure.  **A seizure requires the use of force *with intent to restrain*.**  Accidental force will not qualify. . . .  Nor will force intentionally applied for some other purpose satisfy this rule.  **In this opinion, we consider only force used to apprehend.**

*Id.* at 998 (italics in original, boldface added).  Thus, a seizure by force occurs only where the officer "*objectively* manifests an intent to restrain," *id*. (emphasis in original), *for purposes of apprehending* the target of the force.  The Court explained that this conclusion flowed directly from the common law "mere-touch rule," in which a touch was enough to arrest "provided the officer made his intent to arrest clear."  *Id*. at 996; *see also id*. at 995 (noting "pertinent principle[]" from *California v. Hodari D.*, 499 U.S. 621 (1991), that "the common law considered the

application of force to the body of a person with intent to restrain to be an arrest, no matter whether

the arrestee escaped"). And, the Court explained, "[t]he 'seizure' of a 'person' plainly refers to an

arrest," a "linkage" that "existed at the founding" and "persists today." *Id.* at 996.

In distinguishing between seizures by force and seizures by control, the Court rejected

application to seizures by force of the standard articulated in *Brower v. County of Inyo*, 489 U.S.

593 (1989), which stated that a seizure occurs "only when there is a government termination of

freedom of movement through means intentionally applied." *Torres*, 141 S. Ct. at 1001 (quoting

*Brower,* 489 U. S. at 597). The *Torres* officers' argument for applying the *Brower* standard

"improperly erases the distinction between seizures by *control* and seizures by *force*," each of

which "gives rise to a separate rule" due to its "separate common law pedigree." *Id.* (emphases in

original). In contrast to a seizure by force, as was at issue in *Torres*, "a seizure by acquisition of

control involves either voluntary submission to a show of authority or the termination of freedom

of movement." *Id. County of Brower* is a "prime example" of the latter in that it involved "the

police seiz[ing] a driver when he crashed into their roadblock." *Id.*

*Torres* clarifies the analysis for determining when a use of force constitutes a seizure, by

distinguishing such seizures from seizures that do not involve the use of force. For seizures

claimed to occur through the use of force, the "a seizure through the use of force occurs only when

in using physical force the officer manifests an intent to restrain for purposes of an apprehension.

Pre-*Torres* cases have correctly recognized this doctrinal framework. *See Abujayyab v. City of

New York*, No. 15 Civ. 10080 (NRB), 2018 WL 3978122, at *5 (S.D.N.Y. Aug. 20, 2018)

("However, physical force by a police officer does not constitute a seizure when it is not part of an

effort to restrain the plaintiff.") (citing cases); *Estate of Jackson v. Rochester*, 705 F. Supp. 779,

786 (W.D.N.Y. 1989) (no seizure because "Gonzalez did not draw his revolver and fire it to

apprehend Jackson; rather, he fired his revolver in self-defense because Jackson suddenly moved toward him with a raised knife") (citing *Dodd v. City of Norwich*, 827 F.2d 1, 7 (2d Cir. 1987)).

The cases cited in Plaintiff's pre-motion opposing letter (dkt. no. 36) do not apply a different rule for assessing whether a use of force constitutes a seizure—but if they did they would be inconsistent with *Torres*. *Davenport v. Borough of Homestead*, No. 2:13CV250, 2016 WL 5661733 (W.D. Pa. Sept. 30, 2016), noted that "[i]f . . . [a police] officer fires his gun directly at [an] innocent bystander in the mistaken belief that the bystander is [a] robber, then a Fourth Amendment seizure has occurred." *Id.* at *14 (citing *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)). That is in line with *Torres*, because in the hypothetical the officer has intentionally used force with intent to restrain the bystander; his subjective misidentification of the bystander does not alter the analysis. In *Martien v. City of Schenectady*, No. 1:04-CV-679 (FJS/RFT), 2006 WL 1555565, at *1-2 (N.D.N.Y. June 2, 2006), the injured plaintiff, though not the actual target of the arrest, was a passenger in a car that was pulled over by the police for a traffic offense, so the officer's conduct occurred in the context of an intent to restrain. And in *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 378 (D. Conn. 2009), both plaintiffs ultimately were arrested.

### 2.    Under Any View Of The Complaint Mr. Santana Manifested No Intent To Restrain Plaintiff

*Torres* makes clear there is no seizure here because the factual allegations belie any claim that Mr. Santana shot Plaintiff with an intent to restrain him. That is not a pleading failure; it is the essence of Plaintiff's narrative that he was but an observer (in his telling) to Mr. Santana's attempt to arrest someone else. As the Complaint relates, Mr. Santana and his fellow ICE officer struggled with Avendaño-Hernandez, repeatedly tasing him, in an attempt to place him in handcuffs. Cmplt. ¶ 29. When Avendaño-Hernandez ran away, Mr. Santana chased him and grabbed onto him. *Id.* ¶¶ 30-31. Plaintiff approached the area where Mr. Santana was trying to

apprehend Avendaño-Hernandez, inserted himself between Avendaño-Hernandez and the house, and was shot.  *Id.* ¶¶ 33-40.  After being shot Plaintiff was taken to the hospital, *id.* ¶ 55, and there is no allegation Mr. Santana ever saw him again.  There is simply nothing in the Complaint to support an inference that Mr. Santana manifested an intent to restrain Plaintiff for purposes of apprehending him.  To the contrary, Mr. Santana manifested an intent to restrain Avendaño-Hernandez.  Accordingly, there is no seizure of Plaintiff and no Fourth Amendment claim.

**B.     The Complaint Fails To State A Substantive Due Process Claim Because A Law Enforcement Officer's Shooting Of A Person Who Inserts Himself Into The Officer's Struggle With A Fleeing Target Does Not Shock The Conscience**

Because Plaintiff was not "seized," he is left to assert an alleged substantive due process right to be free from excessive force that has been recognized in rare cases falling outside the Fourth Amendment.  *See Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir. 1995).  To avoid dismissal of his Fifth Amendment claim, however, Plaintiff "must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)); *see also Medeiros v. O'Connell*, 150 F.3d 164, 170 (2d Cir. 1998) ("Alleged abuses of the police power are sufficiently arbitrary to rise to constitutional magnitude only when the conduct at issue 'shocks the conscience.'").

That is a very high bar.  "Conscience-shocking" conduct by government officials ordinarily must be "*intended* to injure in some way unjustifiable by *any* government interest."  *County of Sacramento*, 523 U.S. at 849 (emphases added).  Negligence, recklessness, gross negligence, and conscious disregard categorically will not suffice.  *See id.* at 854-55.  The Supreme Court held in *Lewis* that the defendant police officer's pursuit of a fleeing suspect in a high-speed auto chase, even if the conduct caused the suspect's death through deliberate or

21

reckless indifference to life, does not shock the conscience.  *See id.* at 836, 853-55.  This standard "screens out all but the most significant constitutional violations, 'lest the Constitution be demoted to . . . a font of tort law.'"  *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (quoting *Lewis*, 523 U.S. at 847 n.8).

Mr. Santana's alleged actions do not shock the conscience as a matter of law.  As alleged in the Complaint, Plaintiff approached the area where Mr. Santana was attempting to apprehend Avendaño-Hernandez, after the latter had been struggling to get away to the point that the ICE officers had to wrestle with an use a taser on him to attempt to get him into handcuffs.  Cmplt. ¶¶ 28-29.  Avendaño-Hernandez then "ran away from" the ICE agents and Mr. Santana "ran after him" to try and maneuver him away from the house and back toward to the ICE vehicle.  *Id.* ¶ 30.  As Mr. Santana caught up to the target and tried to maneuver him away from the house and back toward the ICE vehicle, the target grabbed onto a metal pole affixed to the stairs in front of the house.  *Id.* ¶¶ 31-34.

Plaintiff then inserted himself into this chaotic scene of an armed officer attempting to gain control of a target of a lawful arrest struggling to flee—someone who Plaintiff saw could not be subdued by two ICE agents or a taser.  Even Plaintiff's omission from the Complaint of his own pummeling of Mr. Santana does not transform the shooting into a conscious-shocking event, as no reasonable inference can be drawn that Defendant acted with an intent to harm unrelated to any legitimate law enforcement objective.  *See Lewis*, 523 U.S. at 853 ("[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock . . . ."); *compare Bogart v. City of New York*, No. 13 Civ. 1017 (NRB), 2016 WL 4939075, at *9 (S.D.N.Y. Sept. 6, 2016) (summary judgment on due process excessive force claim denied where plaintiff, who interfered with officer's attempt

22

to arrest U.S. flag carrier during "Occupy Wall Street" demonstrations, alleged that officer injured

her intentionally for purpose of silencing her First Amendment expression).   Mr. Santana was

attempting to make a lawful arrest of a fleeing target, Plaintiff put himself in the middle and was

shot.   Far from shocking the conscience, the harm to Plaintiff was readily foreseeable.   Plaintiff's

Fifth Amendment claim accordingly should be dismissed.

## III.   THE COURT SHOULD STAY DISCOVERY PENDING RESOLUTION OF THIS MOTION TO DISMISS

This Court has "considerable discretion" to stay discovery "upon a showing of good

cause."   *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 4211446, at *1 (E.D.N.Y. Mar. 7,

2018).   In determining whether a party has shown "good cause," courts typically consider three

factors: "(1) whether the defendant has made a strong showing that plaintiff's claims are

unmeritorious; (2) the breadth of discovery and burden of responding to it; and (3) the risk of

unfair prejudice to the party opposing the stay."   *Id.* at *1.   A stay of discovery should serve

"[t]he interests of fairness, economy, and efficiency." *United States v. County of Nassau*, 188

F.R.D. 187, 188-89 (E.D.N.Y. 1999).   Here, each factor supports a stay.

*First,* Defendant has made a strong showing that Plaintiff's claims are unmeritorious on

multiple grounds.   Those arguments, if successful, are dispositive of all claims.   *See Valentini v.

Group Health Inc*., No. 20 Civ. 9526 (JPC), 2021 WL 861275, at *1 (S.D.N.Y. Mar. 8, 2021)

(granting stay where there were "several substantial arguments in favor of dismissal"); *Niv v.

Hilton Hotels Corp.*, No. 06 Civ. 7839 (PKL), 2007 WL 510113, at *1 (S.D.N.Y. Feb. 15, 2007)

(granting stay where defendants' motion "appears not to be unfounded in the law").

*Second,* the breadth of discovery in this action is substantial, despite the narrow fact

issues, as it will likely require the collection, processing, and review of documents across

multiple messaging applications, social media accounts, and email accounts, as the parties have

23

already discussed during a meet and confer.  Declaration of Elizabeth Wolstein, dated June 21, 2021 ("Wolstein Decl.") ¶ 2.  There are multiple non-party witnesses who may need to be deposed.  And both sides will need discovery from the co-defendant the United States, which is in possession of all official ICE documents.

The burden of discovery is heightened in this case given that, as alleged in the Second Amended Complaint, the plaintiff is a "is a Mexican national who lives in" Mexico.  Cmplt. ¶ 10.  Therefore, essential witnesses, including Plaintiff, as well as documents, may be located outside the United States.  And, in any event, the collection and review of documents will likely require the engagement of translation services.  *See Niv*, 2007 WL 510113, at *2 (finding burden and granting stay where, among other things, "[d]iscovery in any forum will likely require, *inter alia,* the translation, review, and production of Hebrew and Arabic documents").

*Third,* there is no risk of prejudice to Plaintiff: if the motion is denied, the parties can promptly resume discovery.  Indeed, while Mr. Santana has produced most of the documents in his possession—including, among other things, photographs of and medical records relating to the injuries he sustained from Plaintiff's attack—and has answered interrogatories, Plaintiff has not yet produced any discovery in response to Mr. Santana's document requests or interrogatories.  Plaintiff has instead requested multiple discovery extensions, first on May 6, 2021, and most recently on June 8, 2021.  Wolstein Decl. ¶¶ 3-4.  In addition, discovery has not yet begun as to the United States, which has not yet responded to the Complaint.  Given the early stage of the case a stay would cause no prejudice.  *See Giminez v. Law Offices of Hoffman & Hoffman, No*. CV-12-0669 (JFB) (ETB), 2012 WL 2861014, at *2 (E.D.N.Y. July 11, 2012) (no prejudice where actions were "in their infancy").

Accordingly, good cause exists to stay discovery pending resolution of the motion to dismiss: Mr. Santana "has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *New York v. Pennsylvania Higher Educ. Assist. Agency*, No. 19 Civ. 9155 (ER), 2020 WL 605944, at *1 (S.D.N.Y. Feb. 7, 2020).

## **CONCLUSION**

For the foregoing reasons the Court should (i) dismiss with prejudice the Second Amended Complaint in its entirety as against Mr. Santana, and (ii) stay discovery as between Plaintiff and Mr. Santana pending resolution of this motion to dismiss.

Dated: New York, New York
      June 21, 2021

                     Respectfully submitted,

                     **SCHLAM STONE & DOLAN LLP**

By:      ___s/ Elizabeth Wolstein___
                     Elizabeth Wolstein
                     Douglas A. Grover
                     Michael Brodlieb
                     David J. Goldsmith
                     26 Broadway
                     New York, New York 10004
                     Telephone:  (212) 344-5400
                     Facsimile:  (212) 344-7677
                     E-Mail:  ewolstein@schlamstone.com

                     *Attorneys for Defendant*
                     *Henry V. Santana*