```
 1                      UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF NEW YORK
 2                                   )
 3    ERICK DIAZ CRUZ,               )   1:20-cv-00891-EK-SJB
                                     )
 4                   Plaintiff,      )   Brooklyn, NY
                                     )   July 15, 2021
 5                   vs.             )   11:05 AM
                                     )
 6    JOHN DOE 1, et al.,            )
                                     )
 7                   Defendants.     )

 8
                       TRANSCRIPT OF MOTION HEARING
 9            BEFORE THE HONORABLE SANKET J. BULSARA
                   UNITED STATES MAGISTRATE JUDGE
10
      APPEARANCES (All present by video or telephone):
11
      For the Plaintiff:       GABRIEL PAUL HARVIS, ESQ.
12                             BAREE N. FETT, ESQ.
                               ELEFTERAKIS ELEFTERAKIS & PANEK
13                             80 Pine Street
                               30th Floor
14                             New York, NY 10005

15    For the Defendant,       DARA A. OLDS, ESQ.
      United States of America: UNITED STATES ATTORNEY'S OFFICE
16                             271 Cadman Plaza East
                               Brooklyn, NY 11201
17
      For the Defendant,       ELIZABETH WOLSTEIN, ESQ.
18    Henry V. Santana:        DAVID J. GOLDSMITH, ESQ.
                               MICHAEL A. BRODLIEB, ESQ.
19                             SCHLAM STONE & DOLAN LLP
                               26 Broadway
20                             18th Floor
                               New York, NY 10004
21
                       Michael Drake, CET**D-513
22                             eScribers
                          7227 North 16th Street
23                          Phoenix, AZ 85020
                            www.escribers.net
24
      Proceedings recorded by electronic sound recording; transcript
25    produced by transcription service.
```

1                         I N D E X

2  RULINGS:                                      PAGE LINE
   Government's motion to stay case is denied.     7      11
3
   Defendant Santana's motion to stay            20      21
4  discovery is denied.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            THE COURT:  We're here for a hearing and status

2    conference in 20-cv-891.  Who's here for the plaintiffs?

3            MR. HARVIS:  Good morning, Your Honor.  This is

4    Gabriel Harvis on behalf of the plaintiff.

5            THE COURT:  Okay.  And who's here for --

6            MS. FETT:  Good --

7            THE COURT:  Okay, go ahead.

8            MS. FETT:  I apologize.  Good morning, Your Honor.

9    This is Baree Fett on behalf of the plaintiff.

10           THE COURT:  Okay.  And who is here for the United

11   States?

12           MS. OLDS:  Sorry about that.  Good morning, Your

13   Honor.  Dara Olds on behalf of the United States.

14           THE COURT:  Okay.  And who is here for the -- anyone

15   else for the United States?  Okay.  Who's here for the

16   individual defendant?

17           MS. WOLSTEIN:  Good morning, Your Honor.  This is

18   Elizabeth Wolstein.  And I have with me my colleagues David

19   Goldsmith and Michael Brodlieb.

20           THE COURT:  Okay.  Good morning.

21           UNIDENTIFIED SPEAKER:  Good morning.

22           THE COURT:  I have to say, the motion papers that the

23   parties have all filed leaves quite a bit to be desires.  So

24   the individual defendant's counsel has filed a stay application

25   in a case where that application was previously made and

1   denied.  And where we are on -- and where previously the

2   argument for a stay was -- well, we'd like to complete phase 1

3   discovery, document and interrogatory discovery, but we want to

4   delay deposition discovery.  And now close to the brink of the

5   close of discovery, there's an application to stay the case in

6   light of a motion to dismiss that has not yet even been filed.

7          The Government's letter seeks a stay of discovery not

8   just on the basis of a -- well, not clear to me that they're

9   doing it on the basis of a motion to dismiss.  They're doing it

10  on behalf -- the first proffered reason is in view of a

11  criminal case, the boundaries of which are not defined, not

12  explained, and for which none of the standards relating to a

13  stay are even discussed.

14         The letters from all sides occasionally refer to

15  status of the case, status of discovery.  It appears none of

16  you even talked to each other about what exactly you're

17  seeking.  To say that I was frustrated and wholly unimpressed

18  at the presentation is an understatement, okay?  To say that --

19  to not even acknowledge that previous stays have been denied

20  and to -- and that -- and for me to have to search through the

21  docket and relisten to transcripts and figure out what prior

22  applications were -- and frankly, there was even a second

23  application after the stay was denied that was called a motion

24  for reconsideration of the stay application which I ruled,

25  well, you mistitled it.  It wasn't a motion for

1   reconsideration.  You were seeking a different discovery

2   schedule.

3          So we're left with all of that.  and so you haven't

4   really impressed me with any of the arguments on any of the

5   sides.

6          I'll start with you, Ms. Olds.  What is the criminal

7   case that you are talking about?  Against who is it potentially

8   being brought?  And what is the status?

9          MS. OLDS:  Thank you, Your Honor.  It is potentially

10  being brought against Mr. Santana, although my understanding is

11  that there are other parties being investigated as well.  And

12  my understanding of the status is only that it is -- it is

13  continuing to be investigated.  There haven't been indictments.

14  It is under investigation.  I know that the Department's

15  Homeland Security conducted an internal investigation which has

16  been referred to our office for a criminal probe, and that

17  criminal probe is proceeding.

18         And so our motion does not seek a stay from discovery

19  but rather a stay of the case because of the location of

20  documents and the investigation that's happening by the agents

21  involved.  And so the complications of having an agent

22  testifying in deposition while the criminal investigation is

23  ongoing as well as our lack of access to documents to respond

24  to the complaint are the reasons why we requested the stay of

25  the case itself as to the FDCA (ph.) case.

1    With respect to the motion that's pending, the

2    Government doesn't have a position on whether that motions

3    continued to be briefed or other discovery between the other

4    parties.

5    THE COURT:  Ms. Olds, the cases dealing with parallel

6    civil and criminal investigations and stays are legion, okay?

7    None of them are cited.  They're factors that have to be

8    evaluated.  There are details that need to be sussed out.

9    This happens in the SEC context all of the time.  And it cannot

10   happen on the basis of vague allegations about what documents

11   are being sought.  If it comes - if it turns out that there's a

12   particular deponent whose deposition testimony -- perhaps his

13   or her lawyer chooses to not have his client deposed in light

14   of a schedule pending case, that can raise complications and

15   that may justify delay of that deposition.

16   But without knowing even what documents you might even

17   be talking about, okay, the fact that there is a parallel

18   investigation does not mean that a civil case is stayed unless,

19   for example, you can say, well, listen, I tried to get certain

20   documents, but I was told I couldn't get them because they're

21   being used in a criminal investigation.  Okay?  Or I tried to

22   get this person's deposition testimony and sit him down for --

23   a percipient witness to interview to see if I can represent him

24   in the context of a deposition, and his lawyer or -- said no, I

25   can't do that because he's going to assert the Fifth.  Or I

 1 | tried to defend a government witness, and I was told by the
 2 | prosecutor as well with him please don't have him sit for a
 3 | deposition because it potentially creates 3500, Jencks
 4 | material, or other kinds of things, right?
 5 |          These kind of vague allegations about some criminal
 6 | investigation at some point upon an uncertain referral is not a
 7 | basis to grant a stay.  If there are particular items of
 8 | evidence or particular depositions or particular pieces of
 9 | discovery that can't be accessed, I would certainly entertain
10 | that.  But the kind of vague non-particularized showing is not
11 | a basis to grant a stay.  A stay is denied.
12 |          MS. OLDS:  Well, Your Honor, I can tell you that the
13 | reason that we have not been able to respond to the complaint
14 | is we do not have any access to any of the documents that were
15 | created as far as the follow-up after the shooting happened.
16 | Agency counsel doesn't have them.  It's not been released to
17 | the civil division.  We have not been able to review them.  And
18 | so that's part of the problem as far as being able to
19 | articulate the Government's response to the FDCA claim.
20 | (Indiscernible) level and information for our office as well.
21 | We don't -- we don't have the documents and access to them.  If
22 | Your Honor wants us to --
23 |          THE COURT:  Well, you just mentioned -- you just
24 | mentioned that there was a DHS investigation.  Was that a
25 | criminal investigation that led to the U.S. Attorney referral?

1              MS. OLDS:  Yes.  So that was an internal

2   investigation, inspector general investigation of the shooting.

3   And as a result of that investigation which we don't have, the

4   case was referred to the U.S. Attorney's Office for criminal

5   investigation and possible prosecution.

6              THE COURT:  And you don't have access to the DHS

7   material?

8              MS. OLDS:  We don't have it.  No, Your Honor.

9              THE COURT:  And when was the last time you inquired

10  about whether or not the U.S. -- the criminal investigation was

11  ongoing?

12             MS. OLDS:  It was shortly before we filed a request

13  for the stay and were told that -- we told the criminal

14  division that we filed that request and keep us updated.  It

15  was a change.  And so that's the last time that I inquired.

16             THE COURT:  I'll permit you to renew your application,

17  but I suggest you cite the standards and the relevant case law

18  and that you particularize what you're talking about.  But the

19  way that the letter was framed, it was less about being able to

20  defend of whether -- it's about certain discovery can't be

21  accessed, et cetera, which suggests that there is discovery

22  that can be accessed, okay?

23             What's the plaintiff's view about -- and part of the

24  reason I'm a little bit unimpressed by the Government's

25  application is that the other parties seem to have been doing

1   discovery of their own.  Okay?  They seem to have at least
2   exchanged names of witnesses.  One of the letters talks about
3   documents that have been produced.  And so there are documents
4   and pieces of evidence out there.  And perhaps the -- you
5   thought to talk to your fellow litigants about when their
6   production is being made, that you get copies of it.  Okay?  I
7   don't need to tell everybody how to litigate here, but at some
8   point, if some of the parties have documents in their
9   possession and they intend to use them in the case, they can't
10  proceed if they don't give everybody else those documents,
11  okay?

12          So I suggest that you huddle up with both plaintiff's
13  counsel and individual defendant's counsel because it appears
14  to me there's a lot of evidence floating around that people are
15  dealing with.  Now, that doesn't -- that may or may not affect
16  your ability to file an answer, but it doesn't -- it is not the
17  classic case where we have the entire -- an entire --
18  everything is a plaintiff allegation and everything else is in
19  the Government's sole custody or control and there are no other
20  documents and it's a sealed criminal investigation.

21          So you can renew your application, but I think you
22  need to figure out what the heck is going on in the case
23  between the other parties and what the heck they're exchanging
24  because it seems to me quite a bit.  And then maybe you can ask
25  your colleagues why you don't have this information that the

 1   other parties seem to have in their possession.  And you can

 2   see how it informs your application, see whether or not you

 3   can -- it affects your ability to file an answer.  It still

 4   may.  It still may disable your ability to file an answer in

 5   the case.  But if I'm going to grant an application like that,

 6   you've got to cite authority to that effect.

 7          And I take it though from what you said that you don't

 8   know whether the Government would be moving here to dismiss the

 9   business claims or whether it would -- I'm sorry -- there are

10   no business claims.  Whether the Government would be moving to

11   dismiss or it would simply be filing an answer at this point

12   or -- to file an answer.

13          MS. OLDS:  That's correct, Your Honor.  We don't -- we

14   don't know.  We do -- the business claims are asserted as

15   individual -- or are listed (indiscernible) FDCA claims that's

16   (indiscernible) against the Government.  That's correct.

17          THE COURT:  So you don't know whether you would be

18   moving to dismiss or seeking to file an answer.  And so you'd

19   be seeking just simply an extension of time.

20          So, Ms. Olds, one thing that you have to consider,

21   right, is the following:  It is possible to stay your

22   obligation to answer or otherwise move to the complaint, okay,

23   without seeing the discovery in the case.  What that means is

24   you can use whatever you're able to produce.  You can't produce

25   what you don't have.  It doesn't disable your ability to attend

1   depositions in the case, for example.  But if I grant you a

2   stay of discovery, it usually means you can't start taking

3   discovery from everybody else.  In other words, if the other

4   parties are doing depositions, you can't sword and shield it

5   and decide I'm going to show up and take -- ask questions.

6          Now, that may be used to not have any depositions at

7   all, but that's the problem with the other application, that

8   it's not done in the context of what -- how the Government and

9   the case might be affected.  So there are ways -- if your

10  application wants me to suspend your answer or time to move on

11  the complaint and you're giving the Court updates every sixty

12  days but you're -- or ninety days as to whether you still need

13  that time to be extended and you do have the agreement of the

14  parties, that's something I may be able to sign onto.

15         And then the parties can serve discovery on you.  You

16  can serve some discovery on them.  And if there are certain

17  things you can't produce because -- or you need to supplement

18  your answer if you got more documents, that's the way to deal

19  with it.  And that way you could continue to participate in the

20  discovery that has been going on for some period of time.

21         Now, some of that discovery may not affect you.  It

22  may not.  It may.  I don't know.  But I would think that you

23  would want to be caught up to speed on some of that.

24         So I'll let you file whatever additional application

25  or renewed application you want.  But please be mindful, if I

1  grant a stay of the Government saying -- a discovery stay and

2  an indefinite extension of the time to answer and respond to

3  the complaint with periodic updates, it doesn't -- you're

4  probably not going to be able to pick your own discovery in the

5  case until that stay is lifted.

6          Let me hear from plaintiff's counsel first.  What is

7  your position with respect to the Government's stay application

8  or -- and I know everybody renewed, and you'll get an

9  opportunity to respond in writing.  But I'd like to know at

10  least if there are issues that we would discuss and get them

11  teed up.

12          MR. HARVIS:  Thank you, Your Honor.

13          So I -- what Your Honor was describing just now in

14  terms of a stay of the answer deadline while we otherwise have

15  the opportunity to participate -- to serve discovery demands

16  and from Ms. Olds to attend depositions, that strikes me as

17  being the right way to handle it because, in our view,

18  certainly the discovery, the documents that are in the

19  possession of the criminal investigators are important to the

20  case and relevant.  And no question about it, those are things

21  that we're going to want to see.

22          But we view that as a rather small aspect of the

23  discovery that has to be completed here and that we don't view

24  it as anything that would inhibit us from, for example,

25  deposing the numerous civilian eye witnesses that were at the

1  scene who obviously -- I don't know whether they gave

2  statements or not.  I think it's unlikely.  And they're

3  probably just going to be asked about what they saw and if

4  their memory is fading.  We think that's something that should

5  be done as soon as possible.

6          And if I may, I would just go on to say I think that

7  that's very much true of our client, of Mr. Diaz Cruz.  I would

8  love to have his testimony taken so that he can have his -- at

9  least has a reasonable option of returning to Mexico if he

10  wants to do that and he's not burdened with the prospect of

11  having to come back into the United States which is uncertain

12  to an extent.  We'll have to attend his deposition.

13          And then I agree it's a little bit thornier with

14  respect to Santana.  And so I think there is a number of ways

15  that counsel could confer to try to figure out ways that we can

16  work around the fact that we don't have the statement and that

17  there's a criminal investigation.

18          And I would just note that the fact that there's a

19  criminal investigation and that there might be an indictment,

20  that -- and we put this in our letter, that would only

21  complicate things further.  So if there's a time to deal with

22  the fact that there's a criminal investigation, it's now,

23  pre-indictment.  And I think that's what the cases in the SEC

24  context say.  So that's our general position.

25          THE COURT:  Well, Mr. Harvis, you should be mindful --

 1   I understand, and I appreciate that.  You have to be mindful
 2   that, if we sent down this path that I just am thinking about
 3   on top of my head, right, it can create the following
 4   complications.
 5           It may be that the -- if the Government comes into
 6   possession of documents following the completion of the
 7   criminal investigation that leads it to want to serve
 8   additional document requests on the basis of documents that are
 9   in possession or depose people who have not previously been
10   deposed, that's going to be permitted because they can't -- I'm
11   not going to handcuff them of being able to affirmatively take
12   discovery because they don't have all of the information they
13   need from which they can make a reasonable basis about what's
14   perhaps relevant and pertinent to their claim or defenses.
15           So it doesn't mean that certain discovery will go
16   forward, but it doesn't mean that you're going to potentially
17   have more to come.  And it may be also that you get
18   supplemental responses if certain documents can't be produced
19   because of criminal investigation or they're not in their
20   current possession.  There's going to be a lot of latitude to
21   say, okay, well, we didn't have them, we didn't have access,
22   and we're now making a supplemental production.  We have to
23   update our answers.  And we have to be mindful of that.
24           But I think the problem here is something that you
25   said which is I don't think the parties have actually talked to

```
 1    counsel altogether about what the heck the discovery in the
 2    case looks like and have just been filing letters and
 3    litigating via email and letter.  Or I do think what you said
 4    and -- and counsels an extension of time of some length, if
 5    it's a reasonable length to start before we could actually
 6    conclude discovery in this case.
 7              Ms. Wolstein?
 8              MS. WOLSTEIN:  Thank you, Your Honor.
 9              I mean, Your Honor, I think this could not be more
10    prejudicial to Mr. Santana and (indiscernible) claims.  The key
11    piece of discovery for all the parties is a videotape of the
12    event in issue.  All right?  It is in possession of the
13    Government, of the Office of the Inspector General last time we
14    understood.  I have not seen the tape, and I have heard about
15    it and understand and have a strong basis to believe this
16    videotape is supportive of Mr. Santana's defense.  It is the
17    key -- the key --
18              THE COURT:  Ms. Wolstein, this supposed videotape is
19    never mentioned in any of your letters.
20              MS. WOLSTEIN:  It's --
21              THE COURT:  And when you say this is prejudicial, what
22    are you talking about?
23              MS. WOLSTEIN:  I'm explaining, Your Honor.  It was
24    actually in my letter.  It was in my most recent letter, the
25    July 2nd letter, in relation to requesting the -- as an
```

1    alternative a backup extension of the discovery, the --

2              THE COURT:  What is --

3              MS. WOLSTEIN:  It is a videotape --

4              THE COURT:  Answer my question.  What is prejudicial?

5    Stay from discovery, what is prejudicial?

6              MS. WOLSTEIN:  Yes.

7              THE COURT:  What is --

8              MS. WOLSTEIN:  You have to examine the plaintiff's

9    deposition without being able to show -- and any of the eye

10   witnesses of which many are listed to have to take that

11   deposition and all those witness depositions without being able

12   to show the video.  This is a plaintiff who pretends to be an

13   innocent bystander.  He beat up on Mr. Santana.  He pounded him

14   in the face.  He got a concussion, orbital, corneal injuries.

15   He omitted that from the complaint.

16             He needs to be shown the videotape.  The plaintiff and

17   I have -- plaintiff's counsel and I have discussed this case

18   going back a long way.  I believe the Government is aware of

19   it.  It's mentioned in my letter.  Maybe it got lost.  It's

20   mentioned in the context of the backup argument extending

21   discovery int eh alternative of the stay.

22             But to ask you to go forward with all the depositions

23   without the key piece of evidence is just not fair to anyone,

24   frankly.  I mean, and just to give a secondary example of

25   materials in the same category, to not be able to get access to

1    the Department of --

2              THE COURT:  This is your letter.

3              MS. WOLSTEIN:  Pardon me?

4              THE COURT:  This is what you said in your letter.

5    Okay.  On page 4, relevant documents and information are

6    unavailable to Mr. Santana.  In particular, DHS and other

7    entities are in possession of a video of the event that we have

8    reason to believe supports Mr. Santana's defense.  That's

9    literally all you said in the letter.  You don't tee it up as,

10   well, by the way, none of the other discovery can be taken,

11   none of -- it's the critical piece of evidence in the case.

12   And that -- and so what are you proposing?

13             MS. WOLSTEIN:  Well, just to give a second example,

14   there is a file that the enforcement agency --

15             THE COURT:  Answer my question.  What is it that you

16   are proposing?

17             MS. WOLSTEIN:  We are -- well, I would -- I would --

18   we are proposing a stay which leads into the factors -- a stay

19   of discovery.  It overlaps -- the issues do not -- the standard

20   for motion to dismiss -- for a motion to stay pending motion to

21   dismiss is one thing.  In this case because of the fact -- the

22   actual fact and the reasons for the stay do bleed into the fact

23   that there is a criminal investigation which the Government is

24   unable to produce documents.  So the factors -- this issue is

25   perhaps more appropriately considered under the factors that go

1    to the stay of the case when there is a parallel criminal case.

2            But what I'm -- what we are asking for is either the

3    stay of discovery that we asked for, and I can address some of

4    the Court's comments on that, or certainly a -- that the -- and

5    frankly, I'm struggling because I don't see any circumstances

6    in which the Government would produce that tape.  We could

7    litigate it.  We could move to compel.  I think we would lose.

8            THE COURT:  Have you asked the Government for the

9    tape?

10           MS. WOLSTEIN:  Well, I know -- I mean, I have been in

11   touch with agency counsel before the Government was in the

12   case, when we were litigating without the Government.  And I

13   know that that --

14           THE COURT:  It's a yes or no.

15           MS. WOLSTEIN:  -- it was unavailable to him.  I have

16   asked him for it.  He doesn't have it.  It was unavailable to

17   him.

18           THE COURT:  You served a document request for it?

19           MS. WOLSTEIN:  Well, I have not served discovery on

20   the Government.  We have served -- we have not served -- I

21   don't think anyone has served discovery on the Government

22   pending the Government's answer.

23           THE COURT:  So you don't know whether the Government

24   has taken the position that they are unwilling to produce the

25   document because you haven't actually asked for it?

1        MS. WOLSTEIN:  We have not served a document request.

2        THE COURT:  And when you say that the agency counsel

3   told you that it was unavailable, meaning --

4        MS. WOLSTEIN:  He didn't have it.  He could not

5   provide it to me.  I ask for copies.

6        THE COURT:  But --

7        MS. WOLSTEIN:  But that's before the Government was in

8   the case.

9        THE COURT:  But that, I take it, was not a statement

10  that if he had it, he couldn't produce it but because of some

11  barrier to production?

12        MS. WOLSTEIN:  I asked that it -- I don't think it

13  would be produced.  I think they would make us make a 2E (ph.)

14  request or a document request.  I mean, at that point, it would

15  have been have been a 2E request before the Government was in

16  the case.  I can ask Ms. Olds if she would -- if faced with a

17  document request, would the Government produce that videotape.

18        THE COURT:  Okay.  And so why would also -- why would

19  this counsel -- well, let me ask this.  How long have you known

20  about the video?

21        MS. WOLSTEIN:  I don't -- I can't say exactly.  I've

22  known about it for, I don't know, some months.  But --

23        THE COURT:  Why is the video not mentioned in your

24  first stay application?

25        MS. WOLSTEIN:  Well, I don't know if I knew about it

1  then.  I don't remember.  And as far as that goes, we're

2  renewing the stay request because of the change of

3  circumstances of the motion to dismiss which is not -- I don't

4  think that unusual.  I apologize if we failed to mention that

5  there was the previous request.  But even in our first case

6  that we cited in our letter, Lawson v. Rubin, there was a prior

7  stay request that was denied.  And it was later granted.

8           THE COURT:  And why can't we complete document

9  discovery in other -- even the identification of witnesses?

10          MS. WOLSTEIN:  We can do that.  We can do that.  We

11  laid out what we think is going to happen in discovery.  I

12  think there are going to be disputes.  That's fine.  That's

13  normal.  But to be -- for any party -- I mean, the

14  truth-seeking function of discovery is not served by having to

15  take a deposition without the one single key piece of evidence,

16  video evidence.  This case was about a three-minute period

17  that's involving a --

18          THE COURT:  If you're going to make applications to

19  the Court and that's the core of your argument, you tee it up

20  as such in your letters.  The motion for a general stay is

21  denied.  Discovery has been going on for some period of time.

22  We are at the -- near the close of discovery.  I'm happy to

23  grant extensions of time as necessary.  I'm also happy to delay

24  the sequencing and scheduling of deposition to accommodate

25  evidence that either cannot be produced or has not been

 1   produced.

 2           It appear to me that the parties have failed to talk

 3   about the contents of discovery and actually get to ground on

 4   what witnesses are that are potentially being deposed and have

 5   also conversations with the Government about those very same

 6   issues.  There also has not been a request for the sole piece

 7   of evidence that is proffered as being the barrier to

 8   conducting these depositions.  So I suggest that if it is the

 9   key piece of evidence, that you actually seek to get it and see

10   if production will be in any of these.

11           We had our initial conference back in December.  The

12   whole idea of having those conferences is not to just set the

13   scheduling then show up a couple of weeks -- a few weeks before

14   the discovery is to close and say, okay, by the way, the

15   critical piece of evidence is lacking and we can't complete

16   discovery.  The reasons for depositions being delayed in the

17   first application was the fact that they're out of town, that

18   there are many of them and that it's time-consuming, not that

19   there wasn't a critical piece of evidence that potentially

20   would require the repeat conducting of the deposition.  So a

21   general stay is -- on these bases is denied.

22           As I mentioned, Ms. Olds is permitted to renew her

23   application.  But again, I've given her as well as plaintiff's

24   counsel some contours to discuss what, if anything, potentially

25   could be agreed upon.

1            It appears also to me that, even if depositions need
2       to be delayed, I haven't heard a good reason why, whatever
3       document discovery is available, that has been -- shouldn't be
4       completed.  And the letters themselves reflect the exchange of
5       documents in the case thus far.  And I think that process
6       should have, at a minimum, be concluded to the extent it can.
7       Obviously, there may be documents in the criminal case that
8       cannot be produced.
9            But now that the Government is present, we've got to
10      tee up the request for those documents amongst all the parties.
11      And I suggest that all of you get together and discuss the
12      contours of discovery rather than talking about it at
13      100,000-foot level and then just simply filing letters in the
14      abstract which are like maybe giant ships passing in the night.
15           Ms. Wolstein?
16           MS. WOLSTEIN:  I just wanted to give another example
17      because I think it's important on the discovery, which is
18      that -- there are enforcement files that the agents take with
19      them when they go out on an enforcement operation.  And this
20      has information about the target who was Mr.
21      Avendano-Hernandez.  Sorry if I got the name wrong.  And it's
22      important to know what the agents knew about the -- when the --
23      when they -- and that is discovery that the Government -- that
24      Ms. Olds has said she has no access to any documents.  I think
25      reasonably inferred that that means she cannot get the case

1   file.  Maybe I'm wrong.  But that is another example of --

2          THE COURT:  These are not things that are raised in

3   your letter.  And I think it's somewhat -- I mean, this is what

4   I mean by the parties actually not talking and putting to

5   ground and actually formalizing the contours of what's being

6   requested so that we can have an actual better idea of what can

7   be done and what can't be done.  I take your point that -- and

8   it is a valid one that there are files that are directly

9   pertinent to a criminal investigation, that while one is going

10  on, the Government can't produce and a request to produce them

11  will lead to a null set.  And I'm willing to make

12  accommodations to do that.

13         But in light of a case that's been filed and I'm

14  not -- if we set a discovery schedule in December, I'm not

15  going to suddenly put the whole case on ice and preclude us

16  from finishing what -- or at least able to finish at this time.

17  I also -- I think the parties need to figure out who actually

18  we're talking about from a deposition standpoint because all we

19  have are vague allegations about particular eye witnesses,

20  supposed witnesses who are located outside the country.  And

21  actually, I'm not even sure that the parties have exchanged

22  names of people to whom they think is pertinent.  And I

23  recognize that the list may need to be supplemented and that

24  they need to be exchanged.

25         So for now, I will extend the close of discovery --

1  let me just look at the calendar here.

2          Okay.  The fact discovery deadline is currently 7/10.

3  Obviously, that has passed.  I'm going to extend that to at --

4  well, I'll extend that to for now December 3rd.  I'm going to

5  hold a status conference, I don't have the date right now, in

6  either late October, early November.  I'm not going to set the

7  dates that follow on.  I'm going to have to make adjustments to

8  the fact discovery deadline in light of pending criminal

9  matters and what we actually figure out from the conversation

10 that you're going to have with each other.

11         And obviously, Ms. Olds, you can renew your stay

12 application.  The parties can oppose, join, respond

13 appropriately.  Ms. Olds, how much time do you need?  I would

14 suggest that you take some time to actually discuss with your

15 colleagues or your adversaries about -- are you seeking a

16 complete stay, do you wish to participate in a discovery that's

17 already occurred, so that if you are making renewed

18 application, it is either a -- keeping informed as to whether

19 it's a complete or partial.

20         And so I would -- I would suggest at least three weeks

21 from today.  And then do you need more time than that?

22         MS. OLDS:  I was actually going to ask for August 12th

23 which I think is four weeks from today.

24         THE COURT:  That's fine.  And then I'll give --

25 everybody else can say their piece as it -- and how that

1    proposal affects what they'd like to do by September 3rd.  If

2    you need more time, you can ask for it.  But I'm not going to

3    revisit the question of whether I'm putting a complete pause on

4    discovery that has been going on between the plaintiff and the

5    individual defendant that's been resolved twice now.

6            I will, obviously, as I said, particularly if it's

7    agreed upon make accommodations to continue to extend that

8    schedule to accommodate the fact that I may be granting the

9    Government its stay and that the Government may not be able to

10   produce all of its documents and that there may be a need to

11   delay depositions.  But it is quite clear to me that discovery

12   began when we had the initial conference in December, namely --

13   excuse me, documents, interrogatories, and the like.

14   Deposition discovery should be, at a minimum, completed.

15           And some of the issues that have been teed up today

16   with -- the videotape which is at the heart of the case

17   allegedly and the file, they're at the heart of the case

18   allegedly, those to be asked for.  And there's no reason to

19   delay any of that.  And the Government can respond.  And that

20   may affect depositions, and maybe it doesn't.  But we'll cross

21   that bridge as we -- as we come to it.

22           I hope that's enough guidance for all of you.  Does

23   anyone want to say anything?

24           MR. HARVIS:  No.  I'm fine, Your Honor.  Thank you

25   very much.

1          MS. WOLSTEIN:  I have a question for clarification.

2    Is there any ruling at the moment on depositions, or we're just

3    sort of waiting to see how it plays out with the document

4    request to the Government?

5          THE COURT:  Well, I think -- we'll make -- I think

6    the -- if it wasn't clear enough, I think I'll just be clear.

7    The parties should be talking about who they're thinking about

8    deposing, okay?  And I'm expecting that conversations to occur.

9    It may be that the actual depositions don't take place until

10   sometime in the future after this deadline or after I extend

11   the deadline because the evidence pertinent to those

12   depositions is unavailable.  But what I don't want to be in is

13   a position of having to grant a stay or having stay

14   applications or delay of deposition applications without

15   actually knowing who we're actually talking about deposing

16   because the discussions have been too abstract.

17          And so, Ms. Wolstein, to answer your question, I am

18   open to delaying the actual taking of depositions.  I am not

19   going to be happy if, when such applications are made, that the

20   parties haven't discussed who we're talking about, the number

21   of deponents, their location, and whether or not the documents

22   that haven't been produced actually materially affect the

23   ability to take those depositions.  Now, so I hope that's clear

24   enough guidance.

25          MS. WOLSTEIN:  Yes, Your Honor.  Thank you.

1           THE COURT:  Anyone else with any other questions?

2   Okay.  I wish you all continued good health.  And I will -- I

3   look forward to your papers.  And I will see you -- I will put

4   a date either in late October or early November.

5           MR. HARVIS:  Thank you, Your Honor.

6           MS. OLDS:  Thank you, Your Honor.

7           MS. WOLSTEIN:  Thank you, Your Honor.

8                        (Court is adjourned)

9                          *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           C E R T I F I C A T I O N

2

3         I, Michael Drake, court-approved transcriber, do

4 hereby certify the foregoing is a true and correct transcript

5 from the official electronic sound recording of the proceedings

6 in the above-entitled matter.

7

8

9                                    August 19, 2021

10 _____      _____

   Michael Drake, CER-513, CET-513       DATE

11

12

   eScribers, LLC
13 7227 North 16th Street
   Phoenix, AZ 85020
14 www.escribers.net

15

16

17

18

19

20

21

22

23

24

25

**A**

**ability (5)**
9:16;10:3,4,25;
26:23
**able (13)**
7:13,17,18;8:19;
10:24;11:14;12:4;
14:11;16:9,11,25;
23:16;25:9
**abstract (2)**
22:14;26:16
**access (7)**
5:23;7:14,21;8:6;
14:21;16:25;22:24
**accessed (3)**
7:9;8:21,22
**accommodate (2)**
20:24;25:8
**accommodations (2)**
23:12;25:7
**acknowledge (1)**
4:19
**actual (4)**
17:22;23:6;26:9,
18
**actually (16)**
14:25;15:5,24;
18:25;21:3,9;23:4,5,
17,21;24:9,14,22;
26:15,15,22
**additional (2)**
11:24;14:8
**address (1)**
18:3
**adjourned (1)**
27:8
**adjustments (1)**
24:7
**adversaries (1)**
24:15
**affect (4)**
9:15;11:21;25:20;
26:22
**affected (1)**
11:9
**affects (2)**
10:3;25:1
**affirmatively (1)**
14:11
**again (1)**
21:23
**Against (3)**
5:7,10;10:16
**Agency (4)**
7:16;17:14;18:11;
19:2
**agent (1)**
5:21
**agents (3)**
5:20;22:18,22
**agree (1)**

**13:13**

**agreed (2)**
21:25;25:7
**agreement (1)**
11:13
**ahead (1)**
3:7
**allegation (1)**
9:18
**allegations (3)**
6:10;7:5;23:19
**allegedly (2)**
25:17,18
**alternative (2)**
16:1,21
**although (1)**
5:10
**altogether (1)**
15:1
**amongst (1)**
22:10
**apologize (2)**
3:8;20:4
**appear (1)**
21:2
**appears (3)**
4:15;9:13;22:1
**application (20)**
3:24,25;4:5,23,24;
8:16,25;9:21;10:2,5;
11:7,10,24,25;12:7;
19:24;21:17,23;
24:12,18
**applications (5)**
4:22;20:18;26:14,
14,19
**appreciate (1)**
14:1
**appropriately (2)**
17:25;24:13
**argument (3)**
4:2;16:20;20:19
**arguments (1)**
5:4
**around (2)**
9:14;13:16
**articulate (1)**
7:19
**aspect (1)**
12:22
**assert (1)**
6:25
**asserted (1)**
10:14
**attend (3)**
10:25;12:16;13:12
**Attorney (1)**
7:25
**Attorney's (1)**
8:4
**August (1)**
24:22
**authority (1)**

**10:6**

**available (1)**
22:3
**Avendano-Hernandez (1)**
22:21
**aware (1)**
16:18

**B**

**back (3)**
13:11;16:18;21:11
**backup (2)**
16:1,20
**Baree (1)**
3:9
**barrier (2)**
19:11;21:7
**bases (1)**
21:21
**basis (8)**
4:8,9;6:10;7:7,11;
14:8,13;15:15
**beat (1)**
16:13
**began (1)**
25:12
**behalf (4)**
3:4,9,13;4:10
**better (1)**
23:6
**bit (4)**
3:23;8:24;9:24;
13:13
**bleed (1)**
17:22
**both (1)**
9:12
**boundaries (1)**
4:11
**bridge (1)**
25:21
**briefed (1)**
6:3
**brink (1)**
4:4
**Brodlieb (1)**
3:19
**brought (2)**
5:8,10
**burdened (1)**
13:10
**business (3)**
10:9,10,14
**bystander (1)**
16:13

**C**

**calendar (1)**
24:1
**called (1)**
4:23

**can (29)**
6:14,19,23;7:12;
8:22;9:21,24;10:1,3,
24;11:15,16;13:8,15;
14:3,13;17:10;18:3;
19:16;20:10,10;
22:6;23:6,6;24:11,
12,25;25:2,19
**case (40)**
3:25;4:5,11,15;
5:7,19,25,25;6:14,
18;8:4,17;9:9,17,22;
10:5,23;11:1,9;12:5,
20;15:2,6,16;17:
17:11,21;18:1,1,12;
19:8,16;20:5,16;
22:5,7,25;23:13,15;
25:16,17
**cases (2)**
6:5;13:23
**category (1)**
16:25
**caught (1)**
11:23
**certain (5)**
6:19;8:20;11:16;
14:15,18
**certainly (3)**
7:9;12:18;18:4
**cetera (1)**
8:21
**change (2)**
8:15;20:2
**chooses (1)**
6:13
**circumstances (2)**
18:5;20:3
**cite (2)**
8:17;10:6
**cited (2)**
6:7;20:6
**civil (3)**
6:6,18;7:17
**civilian (1)**
12:25
**claim (2)**
7:19;14:14
**claims (5)**
10:9,10,14,15;
15:10
**clarification (1)**
26:1
**classic (1)**
9:17
**clear (5)**
4:8;25:11;26:6,6,
23
**client (2)**
6:13;13:7
**close (5)**
4:4,5;20:22;21:14;
23:25
**colleagues (3)**

**3:18;9:25;24:15**

**comments (1)**
18:4
**compel (1)**
18:7
**complaint (6)**
5:24;7:13;10:22;
11:11;12:3;16:15
**complete (6)**
4:2;20:8;21:15;
24:16,19;25:3
**completed (3)**
12:23;22:4;25:14
**completion (1)**
14:6
**complicate (1)**
13:21
**complications (3)**
5:21;6:14;14:4
**conclude (1)**
15:6
**concluded (1)**
22:6
**concussion (1)**
16:14
**conducted (1)**
5:15
**conducting (2)**
21:8,20
**confer (1)**
13:15
**conference (4)**
3:2;21:11;24:5;
25:12
**conferences (1)**
21:12
**consider (1)**
10:20
**considered (1)**
17:25
**contents (1)**
21:3
**context (5)**
6:9,24;11:8;13:24;
16:20
**continue (2)**
11:19;25:7
**continued (2)**
6:3;27:2
**continuing (1)**
5:13
**contours (3)**
21:24;22:12;23:5
**control (1)**
9:19
**conversation (1)**
24:9
**conversations (2)**
21:5;26:8
**copies (2)**
9:6;19:5
**core (1)**
20:19

corneal (1)
16:14
counsel (12)
3:24;7:16;9:13,13;
12:6;13:15;15:1;
16:17;18:11;19:2,
19;21:24
counsels (1)
15:4
country (1)
23:20
couple (1)
21:13
COURT (40)
3:1,5,7,10,14,20,
22;6:5;7:23;8:6,9,
16;10:17;11:11;
13:25;15:18,21;16:2,
4,7;17:2,4,15;18:8,
14,18,23;19:2,6,9,18,
23;20:8,18,19;23:2;
24:24;26:5;27:1,8
Court's (1)
18:4
create (1)
14:3
created (1)
7:15
creates (1)
7:3
criminal (24)
4:11;5:6,16,17,22;
6:6,21;7:5,25;8:4,10,
13;9:20;12:19;
13:17,19,22;14:7,19;
17:23;18:1;22:7;
23:9;24:8
critical (3)
17:11;21:15,19
cross (1)
25:20
Cruz (1)
13:7
current (1)
14:20
currently (1)
24:2
custody (1)
9:19

**D**

Dara (1)
3:13
date (2)
24:5;27:4
dates (1)
24:7
David (1)
3:18
days (2)
11:12,12
deadline (5)

12:14;24:2,8;
26:10,11
deal (1)
11:18;13:21
dealing (2)
6:5;9:15
December (4)
21:11;23:14;24:4;
25:12
decide (1)
11:5
defend (2)
7:1;8:20
defendant (2)
3:16;25:5
defendant's (2)
3:24;9:13
defense (2)
15:16;17:8
defenses (1)
14:14
defined (1)
4:11
delay (6)
4:4;6:15;20:23;
25:11,19;26:14
delayed (2)
21:16;22:2
delaying (1)
26:18
demands (1)
12:15
denied (7)
4:1,19,23;7:11;
20:7,21;21:21
Department (1)
17:1
Department's (1)
5:14
deponent (1)
6:12
deponents (1)
26:21
depose (1)
14:9
deposed (3)
6:13;14:10;21:4
deposing (3)
12:25;26:8,15
deposition (16)
4:4;5:22;6:12,15,
22,24;7:3;13:12;
16:9,11;20:15,24;
21:20;23:18;25:14;
26:14
depositions (17)
7:8;11:1,4,6;
12:16;16:11,22;21:8,
16;22:1;25:11,20;
26:2,9,12,18,23
describing (1)
12:13
desires (1)

3:23
details (1)
6:8
DHS (3)
7:24;8:6;17:6
Diaz (1)
13:7
different (1)
5:1
directly (1)
23:8
disable (2)
10:4,25
discovery (58)
4:3,3,4,5,7,15;5:1,
18;6:3;7:9;8:20,21;
9:1;10:23;11:2,3,15,
16,20,21;12:1,4,15,
18,23;14:12,15;15:1,
6,11;16:1,5,21;
17:10,19;18:3,19,21;
20:9,11,14,21,22;
21:3,14,16;22:3,12,
17,23;23:14,25;24:2,
8,16;25:4,11,14
discuss (4)
12:10;21:24;
22:11;24:14
discussed (3)
4:13;16:17;26:20
discussions (1)
26:16
dismiss (8)
4:6,9;10:8,11,18;
17:20,21;20:3
disputes (1)
20:12
division (2)
7:17;8:14
docket (1)
4:21
document (10)
4:3;14:8;18:18,25;
19:1,14,17;20:8;
22:3;26:3
documents (26)
5:20,23;6:10,16,
20;7:14,21;9:3,3,8,
10,20;11:18;12:18;
14:6,8,18;17:5,24;
22:5,7,10,24;25:10,
13;26:21
done (4)
11:8;13:5;23:7,7
down (2)
6:22;14:2

**E**

early (2)
24:6;27:4
effect (1)
10:6

eh (1)
16:21
either (5)
18:2;20:25;24:6,
18;27:4
Elizabeth (1)
3:18
else (6)
3:15;9:10,18;11:3;
24:25;27:1
email (1)
15:3
enforcement (3)
17:14;22:18,19
enough (3)
25:22;26:6,24
entertain (1)
7:9
entire (2)
9:17,17
entities (1)
17:7
et (1)
8:21
evaluated (1)
6:8
even (11)
4:6,13,16,19,22;
6:16,16;20:5,9;22:1;
23:21
event (2)
15:12;17:7
everybody (5)
9:7,10;11:3;12:8;
24:25
evidence (13)
7:8;9:4,14;16:23;
17:11;20:15,16,25;
21:7,9,15,19;26:11
exactly (2)
4:16;19:21
examine (1)
16:8
example (7)
6:19;11:1;12:24;
16:24;17:13;22:16;
23:1
exchange (1)
22:4
exchanged (3)
9:2;23:21,24
exchanging (1)
9:23
excuse (1)
25:13
expecting (1)
26:8
explained (1)
4:12
explaining (1)
15:23
extend (5)
23:25;24:3,4;25:7;

26:10
extended (1)
11:13
extending (1)
16:20
extension (4)
10:19;12:2;15:4;
16:1
extensions (1)
20:23
extent (2)
13:12;22:6
eye (3)
12:25;16:9;23:19

**F**

face (1)
16:14
faced (1)
19:16
fact (11)
6:17;13:16,18,22;
17:21,22,22;21:17;
24:2,8;25:8
factors (4)
6:7;17:18,24,25
fading (1)
13:4
failed (2)
20:4;21:2
fair (1)
16:23
far (4)
7:15,18;20:1;22:5
FDCA (3)
5:25;7:19;10:15
fellow (1)
9:5
FETT (3)
3:6,8,9
few (1)
21:13
Fifth (1)
6:25
figure (5)
4:21;9:22;13:15;
23:17;24:9
file (9)
9:16;10:3,4,12,18;
11:24;17:14;23:1;
25:17
filed (6)
3:23,24;4:6;8:12,
14,23;13
files (2)
22:18;23:8
filing (3)
10:11;15:2;22:13
fine (3)
20:12;24:24;25:24
finish (1)
23:16

**finishing (1)**
23:16
**first (5)**
4:10;12:6;19:24;
20:5;21:17
**floating (1)**
9:14
**follow (1)**
24:7
**following (3)**
10:21;14:3,6
**follow-up (1)**
7:15
**formalizing (1)**
23:5
**forward (3)**
14:16;16:22;27:3
**four (1)**
24:23
**framed (1)**
8:19
**frankly (3)**
4:22;16:24;18:5
**frustrated (1)**
4:17
**function (1)**
20:14
**further (1)**
13:21
**future (1)**
26:10

**G**

**Gabriel (1)**
3:4
**gave (1)**
13:1
**general (5)**
8:2;13:24;15:13;
20:20;21:21
**giant (1)**
22:14
**given (1)**
21:23
**giving (1)**
11:11
**goes (1)**
20:1
**Goldsmith (1)**
3:19
**Good (9)**
3:3,6,8,12,17,20,
21;22:2;27:2
**Government (29)**
6:2;7:1;10:8,10,
16;11:8;12:1;14:5;
15:13;16:18;17:23;
18:6,8,11,12,20,21,
23;19:7,15,17;21:5;
22:9,23;23:10;25:9,
9,19;26:4
**Government's (6)**

4:7;7:19;8:24;
9:19;12:7;18:22
**grant (7)**
7:7,11;10:5;11:1;
12:1;20:23;26:13
**granted (1)**
20:7
**granting (1)**
25:8
**ground (2)**
21:3;23:5
**guidance (2)**
25:22;26:24

**H**

**handcuff (1)**
14:11
**handle (1)**
12:17
**happen (2)**
6:10;20:11
**happened (1)**
7:15
**happening (1)**
5:20
**happens (1)**
6:9
**happy (3)**
20:22,23;26:19
**HARVIS (6)**
3:3,4;12:12;13:25;
25:24;27:5
**head (1)**
14:3
**health (1)**
27:2
**hear (1)**
12:6
**heard (2)**
15:14;22:2
**hearing (1)**
3:1
**heart (2)**
25:16,17
**heck (3)**
9:22,23;15:1
**hold (1)**
24:5
**Homeland (1)**
5:15
**Honor (19)**
3:3,8,13,17;5:9;
7:12,22;8:8;10:13;
12:12,13;15:8,9,23;
25:24;26:25;27:5,6,7
**hope (2)**
25:22;26:23
**huddle (1)**
9:12

**I**

**ice (1)**
23:15
**idea (2)**
21:12;23:6
**identification (1)**
20:9
**important (3)**
12:19;22:17,22
**impressed (1)**
5:4
**indefinite (1)**
12:2
**indictment (1)**
13:19
**indictments (1)**
5:13
**Indiscernible (4)**
7:20;10:15,16;
15:10
**individual (5)**
3:16,24;9:13;
10:15;25:5
**inferred (1)**
22:25
**information (5)**
7:20;9:25;14:12;
17:5;22:20
**informed (1)**
24:18
**informs (1)**
10:2
**inhibit (1)**
12:24
**initial (2)**
21:11;25:12
**injuries (1)**
16:14
**innocent (1)**
16:13
**inquired (2)**
8:9,15
**inspector (2)**
8:2;15:13
**int (1)**
16:21
**intend (1)**
9:9
**internal (2)**
5:15;8:1
**interrogatories (1)**
25:13
**interrogatory (1)**
4:3
**interview (1)**
6:23
**into (4)**
13:11;14:5;17:18,
22
**investigated (2)**
5:11,13
**investigation (22)**
5:14,15,20,22;
6:18,21;7:6,24,25;

8:2,2,3,5,10;9:20;
13:17,19,22;14:7,19;
17:23;23:9
**investigations (1)**
6:6
**investigators (1)**
12:19
**involved (1)**
5:21
**involving (1)**
20:17
**issue (2)**
15:12;17:24
**issues (4)**
12:10;17:19;21:6;
25:15
**items (1)**
7:7

**J**

**Jencks (1)**
7:3
**join (1)**
24:12
**July (1)**
15:25
**justify (1)**
6:15

**K**

**keep (1)**
8:14
**keeping (1)**
24:18
**key (6)**
15:10,17,17;
16:23;20:15;21:9
**kind (2)**
7:5,10
**kinds (1)**
7:4
**knew (2)**
19:25;22:22
**knowing (2)**
6:16;26:15
**known (2)**
19:19,22

**L**

**lack (1)**
5:23
**lacking (1)**
21:15
**laid (1)**
20:11
**last (3)**
8:9,15;15:13
**late (2)**
24:6;27:4
**later (1)**

20:7
**latitude (1)**
14:20
**law (1)**
8:17
**Lawson (1)**
20:6
**lawyer (2)**
6:13,24
**lead (1)**
23:11
**leads (2)**
14:7;17:18
**least (5)**
9:1;12:10;13:9;
23:16;24:20
**leaves (1)**
3:23
**led (1)**
7:25
**left (1)**
5:3
**legion (1)**
6:6
**length (2)**
15:4,5
**less (1)**
8:19
**letter (13)**
4:7;8:19;13:20;
15:3,24,24,25;16:19;
17:2,4,9;20:6;23:3
**letters (7)**
4:14;9:2;15:2,19;
20:20;22:4,13
**level (2)**
7:20;22:13
**lifted (1)**
12:5
**light (4)**
4:6;6:13;23:13;
24:8
**list (1)**
23:23
**listed (2)**
10:15;16:10
**listen (1)**
6:19
**literally (1)**
17:9
**litigants (1)**
9:5
**litigate (2)**
9:7;18:7
**litigating (2)**
15:3;18:12
**little (2)**
8:24;13:13
**located (1)**
23:20
**location (2)**
5:19;26:21
**long (2)**

16:18;19:19

**look (2)**
24:1;27:3
**looks (1)**
15:2
**lose (1)**
18:7
**lost (1)**
16:19
**lot (2)**
9:14;14:20
**love (1)**
13:8

## M

**making (2)**
14:22;24:17
**many (2)**
16:10;21:18
**material (2)**
7:4;8:7
**materially (1)**
26:22
**materials (1)**
16:25
**matters (1)**
24:9
**may (20)**
6:15;9:15,15;10:4,
4;11:6,14,21,22,22;
13:6;14:5,17;22:7;
23:23;25:8,9,10,20;
26:9
**maybe (5)**
9:24;16:19;22:14;
23:1;25:20
**mean (10)**
6:18;14:15,16;
15:9;16:24;18:10;
19:14;20:13;23:3,4
**meaning (1)**
19:3
**means (3)**
10:23;11:2;22:25
**memory (1)**
13:4
**mention (1)**
20:4
**mentioned (7)**
7:23,24;15:19;
16:19,20;19:23;
21:22
**Mexico (1)**
13:9
**Michael (1)**
3:19
**might (3)**
6:16;11:9;13:19
**mindful (4)**
11:25;13:25;14:1,
23
**minimum (2)**

22:6;25:14
**mistitled (1)**
4:25
**moment (1)**
26:2
**months (1)**
19:22
**more (6)**
11:18;14:17;15:9;
17:25;24:21;25:2
**morning (6)**
3:3,8,12,17,20,21
**most (1)**
15:24
**motion (12)**
3:22;4:6,9,23,25;
5:18;6:1;17:20,20,
20;20:3,20
**motions (1)**
6:2
**move (3)**
10:22;11:10;18:7
**moving (3)**
10:8,10,18
**much (3)**
13:7;24:13;25:25

## N

**name (1)**
22:21
**namely (1)**
25:12
**names (2)**
9:2;23:22
**near (1)**
20:22
**necessary (1)**
20:23
**need (14)**
6:8;9:7,22;11:12,
17;14:13;22:1;
23:17,23,24;24:13,
21;25:2,10
**needs (1)**
16:16
**night (1)**
22:14
**ninety (1)**
11:12
**none (5)**
4:12,15;6:7;17:10,
11
**non-particularized (1)**
7:10
**normal (1)**
20:13
**note (1)**
13:18
**November (2)**
24:6;27:4
**null (1)**
23:11

**number (2)**
13:14;26:20
**numerous (1)**
12:25

## O

**obligation (1)**
10:22
**obviously (5)**
13:1;22:7;24:3,11;
25:6
**occasionally (1)**
4:14
**occur (1)**
26:8
**occurred (1)**
24:17
**October (2)**
24:6;27:4
**office (4)**
5:16;7:20;8:4;
15:13
**OLDS (19)**
3:12,13;5:6,9,6:5;
7:12;8:1,8,12;10:13,
20;12:16;19:16;
21:22;22:24;24:11,
13,22;27:6
**omitted (1)**
16:15
**One (6)**
9:2;10:20;17:21;
20:15;23:8,9
**ongoing (2)**
5:23;8:11
**only (2)**
5:12;13:20
**onto (1)**
11:14
**open (1)**
26:18
**operation (1)**
22:19
**opportunity (2)**
12:9,15
**oppose (1)**
24:12
**option (1)**
13:9
**orbital (1)**
16:14
**otherwise (2)**
10:22;12:14
**out (12)**
4:21;6:8,11;9:4,
22;13:15;20:11;
21:17;22:19;23:17;
24:9;26:3
**outside (1)**
23:20
**overlaps (1)**
17:19

**own (2)**
9:1;12:4

## P

**page (1)**
17:5
**papers (2)**
3:22;27:3
**parallel (3)**
6:5,17;18:1
**Pardon (1)**
17:3
**part (2)**
7:18;8:23
**partial (1)**
24:19
**participate (3)**
11:19;12:15;24:16
**particular (6)**
6:12;7:7,8,8;17:6;
23:19
**particularize (1)**
8:18
**particularly (1)**
25:6
**parties (20)**
3:23;5:11;6:4;
8:25;9:8,23;10:1;
11:4,14,15;14:25;
15:11;21:2,22;10;
23:4,17,21;24:12;
26:7,20
**party (1)**
20:13
**passed (1)**
24:3
**passing (1)**
22:14
**path (1)**
14:2
**pause (1)**
25:3
**pending (5)**
6:1,14;17:20;
18:22;24:8
**people (3)**
9:14;14:9;23:22
**percipient (1)**
6:23
**perhaps (4)**
6:12;9:4;14:14;
17:25
**period (3)**
11:20;20:16,21
**periodic (1)**
12:3
**permit (1)**
8:16
**permitted (2)**
14:10;21:22
**person's (1)**
6:22

**pertinent (4)**
14:14;23:9,22;
26:11
**ph (2)**
5:25;19:13
**phase (1)**
4:2
**pick (1)**
12:4
**piece (9)**
15:11;16:23;
17:11;20:15;21:6,9,
15,19;24:25
**pieces (2)**
7:8;9:4
**place (1)**
26:9
**plaintiff (6)**
3:4,9;9:18;16:12,
16;25:4
**plaintiffs (1)**
3:2
**plaintiff's (6)**
8:23;9:12;12:6;
16:8,17;21:23
**plays (1)**
26:3
**please (2)**
7:2;11:25
**point (5)**
7:6;9:8;10:11;
19:14;23:7
**position (5)**
6:2;12:7;13:24;
18:24;26:13
**possession (8)**
9:9;10:1;12:19;
14:6,9,20;15:12;17:7
**possible (3)**
8:5;10:21;13:5
**potentially (7)**
5:7,9;7:3;14:16;
21:4,19,24
**pounded (1)**
16:13
**preclude (1)**
23:15
**pre-indictment (1)**
13:23
**prejudicial (4)**
15:10,21;16:4,5
**present (1)**
22:9
**presentation (1)**
4:18
**pretends (1)**
16:12
**previous (2)**
4:19;20:5
**previously (3)**
3:25;4:1;14:9
**prior (2)**
4:21;20:6

Case 1:20-cv-00891-EK-SJB  Document 45  Filed 08/19/21  Page 33 of 34 PageID #: 277

ERICK DIAZ CRUZ v.
JOHN DOE 1, et al.                                                                                    July 15, 2021

**probably (2)**
  12:4;13:3
**probe (2)**
  5:16,17
**problem (3)**
  7:18;11:7;14:24
**proceed (1)**
  9:10
**proceeding (1)**
  5:17
**process (1)**
  22:5
**produce (11)**
  10:24,24;11:17;
  17:24;18:6,24;19:10,
  17;23:10,10;25:10
**produced (7)**
  9:3;14:18;19:13;
  20:25;21:1;22:8;
  26:22
**production (4)**
  9:6;14:22;19:11;
  21:10
**proffered (2)**
  4:10;21:7
**proposal (1)**
  25:1
**proposing (3)**
  17:12,16,18
**prosecution (1)**
  8:5
**prosecutor (1)**
  7:2
**prospect (1)**
  13:10
**provide (1)**
  19:5
**put (3)**
  13:20;23:15;27:3
**putting (2)**
  23:4;25:3

**Q**

**quite (3)**
  3:23;9:24;25:11

**R**

**raise (1)**
  6:14
**raised (1)**
  23:2
**rather (3)**
  5:19;12:22;22:12
**really (1)**
  5:4
**reason (6)**
  4:10;7:13;8:24;
  17:8;22:2;25:18
**reasonable (3)**
  13:9;14:13;15:5
**reasonably (1)**

**22:25**
**reasons (3)**
  5:24;17:22;21:16
**recent (1)**
  15:24
**recognize (1)**
  23:23
**reconsideration (2)**
  4:24;5:1
**refer (1)**
  4:14
**referral (2)**
  7:6,25
**referred (2)**
  5:16;8:4
**reflect (1)**
  22:4
**relating (1)**
  4:12
**relation (1)**
  15:25
**released (1)**
  7:16
**relevant (4)**
  8:17;12:20;14:14;
  17:5
**relisten (1)**
  4:21
**remember (1)**
  20:1
**renew (4)**
  8:16;9:21;21:22;
  24:11
**renewed (3)**
  11:25;12:8;24:17
**renewing (1)**
  20:2
**repeat (1)**
  21:20
**represent (1)**
  6:23
**request (15)**
  8:12,14;18:18;
  19:1,14,14,15,17;
  20:2,5,7;21:6;22:10;
  23:10;26:4
**requested (2)**
  5:24;23:6
**requesting (1)**
  15:25
**requests (1)**
  14:8
**require (1)**
  21:20
**resolved (1)**
  25:5
**respect (3)**
  6:1;12:7;13:14
**respond (6)**
  5:23;7:13;12:2,9;
  24:12;25:19
**response (1)**
  7:19

**responses (1)**
  14:18
**result (1)**
  8:3
**returning (1)**
  13:9
**review (1)**
  7:17
**revisit (1)**
  25:3
**right (6)**
  7:4;10:21;12:17;
  14:3;15:12;24:5
**Rubin (1)**
  20:6
**ruled (1)**
  4:24
**ruling (1)**
  26:2

**S**

**same (2)**
  16:25;21:5
**Santana (5)**
  5:10;13:14;15:10;
  16:13;17:6
**Santana's (2)**
  15:16;17:8
**saw (1)**
  13:3
**saying (1)**
  12:1
**scene (1)**
  13:1
**schedule (4)**
  5:2;6:14;23:14;
  25:8
**scheduling (2)**
  20:24;21:13
**sealed (1)**
  9:20
**search (1)**
  4:20
**SEC (2)**
  6:9;13:23
**second (2)**
  4:22;17:13
**secondary (1)**
  16:24
**Security (1)**
  5:15
**seeing (1)**
  10:23
**seek (2)**
  5:18;21:9
**seeking (5)**
  4:17;5:1;10:18,19;
  24:15
**seeks (1)**
  4:7
**seem (3)**
  8:25;9:1;10:1

**seems (1)**
  9:24
**sent (1)**
  14:2
**September (1)**
  25:1
**sequencing (1)**
  20:24
**serve (4)**
  11:15,16;12:15;
  14:7
**served (7)**
  18:18,19,20,20,21;
  19:1;20:14
**set (4)**
  21:12;23:11,14;
  24:6
**shield (1)**
  11:4
**ships (1)**
  22:14
**shooting (2)**
  7:15;8:2
**shortly (1)**
  8:12
**show (4)**
  11:5;16:9,12;
  21:13
**showing (1)**
  7:10
**shown (1)**
  16:16
**sides (2)**
  4:14;5:5
**sign (1)**
  11:14
**simply (3)**
  10:11,19;22:13
**single (1)**
  20:15
**sit (2)**
  6:22;7:2
**sixty (1)**
  11:11
**small (1)**
  12:22
**sole (2)**
  9:19;21:6
**sometime (1)**
  26:10
**somewhat (1)**
  23:3
**soon (1)**
  13:5
**Sorry (3)**
  3:12;10:9;22:21
**sort (1)**
  26:3
**sought (1)**
  6:11
**SPEAKER (1)**
  3:21
**speed (1)**

**11:23**
**standard (1)**
  17:19
**standards (2)**
  4:12;8:17
**standpoint (1)**
  23:18
**start (3)**
  5:6;11:2;15:5
**statement (2)**
  13:16;19:9
**statements (1)**
  13:2
**States (4)**
  3:11,13,15;13:11
**status (6)**
  3:1;4:15,15;5:8,
  12;24:5
**stay (39)**
  3:24;4:2,5,7,13,23,
  24;5:18,19,24;7:7,
  11,11;8:13;10:21;
  11:2;12:1,1,5,7,14;
  16:5,21;17:18,18,20,
  22;18:1,3;19:24;
  20:2,7,20;21:21;
  24:11,16;25:9;26:13,
  13
**stayed (1)**
  6:18
**stays (2)**
  4:19;6:6
**still (3)**
  10:3,4;11:12
**strikes (1)**
  12:16
**strong (1)**
  15:15
**struggling (1)**
  18:5
**suddenly (1)**
  23:15
**suggest (6)**
  8:17;9:12;21:8;
  22:11;24:14,20
**suggests (1)**
  8:21
**supplement (1)**
  11:17
**supplemental (2)**
  14:18,22
**supplemented (1)**
  23:23
**supportive (1)**
  15:16
**supports (1)**
  17:8
**supposed (2)**
  15:18;23:20
**sure (1)**
  23:21
**suspend (1)**
  11:10

ERICK DIAZ CRUZ v.
JOHN DOE 1, et al.

July 15, 2021

**sussed (1)**
6:8
**sword (1)**
11:4

**T**

**talk (2)**
9:5;21:2
**talked (2)**
4:16;14:25
**talking (10)**
5:7;6:17;8:18;
15:22;22:12;23:4,
18;26:7,15,20
**talks (1)**
9:2
**tape (3)**
15:14;18:6,9
**target (1)**
22:20
**tee (3)**
17:9;20:19;22:10
**teed (2)**
12:11;25:15
**terms (1)**
12:14
**testifying (1)**
5:22
**testimony (3)**
6:12,22;13:8
**thinking (2)**
14:2;26:7
**thornier (1)**
13:13
**though (1)**
10:7
**thought (1)**
9:5
**three (1)**
24:20
**three-minute (1)**
20:16
**thus (1)**
22:5
**time-consuming (1)**
21:18
**today (3)**
24:21,23;25:15
**together (1)**
22:11
**told (5)**
6:20;7:1;8:13,13;
19:3
**top (1)**
14:3
**touch (1)**
18:11
**town (1)**
21:17
**transcripts (1)**
4:21
**tried (3)**

6:19,21;7:1
**true (1)**
13:7
**truth-seeking (1)**
20:14
**try (1)**
13:15
**turns (1)**
6:11
**twice (1)**
25:5

**U**

**unable (1)**
17:24
**unavailable (5)**
17:6;18:15,16;
19:3;26:12
**uncertain (2)**
7:6;13:11
**under (2)**
5:14;17:25
**understatement (1)**
4:18
**understood (1)**
15:14
**UNIDENTIFIED (1)**
3:21
**unimpressed (2)**
4:17;8:24
**United (4)**
3:10,13,15;13:11
**unless (1)**
6:18
**unlikely (1)**
13:2
**unusual (1)**
20:4
**unwilling (1)**
18:24
**up (10)**
9:12;11:5,23;
12:11;16:13;17:9;
20:19;21:13;22:10;
25:15
**update (1)**
14:23
**updated (1)**
8:14
**updates (2)**
11:11;12:3
**upon (3)**
7:6;21:25;25:7
**use (2)**
9:9;10:24
**used (2)**
6:21;11:6
**usually (1)**
11:2

**V**

**vague (4)**
6:10;7:5,10;23:19
**valid (1)**
23:8
**via (1)**
15:3
**video (5)**
16:12;17:7;19:20,
23;20:16
**videotape (7)**
15:11,16,18;16:3,
16;19:17;25:16
**view (5)**
4:10;8:23;12:17,
22,23

**W**

**waiting (1)**
26:3
**wants (3)**
7:22;11:10;13:10
**way (7)**
8:19;11:18,19;
12:17;16:18;17:10;
21:14
**ways (3)**
11:9;13:14,15
**weeks (4)**
21:13,13;24:20,23
**What's (3)**
8:23;14:13;23:5
**whole (2)**
21:12;23:15
**wholly (1)**
4:17
**Who's (3)**
3:2,5,15
**whose (1)**
6:12
**willing (1)**
23:11
**wish (2)**
24:16;27:2
**without (8)**
6:16;10:23;16:9,
11,23;18:12;20:15;
26:14
**witness (3)**
6:23;7:1;16:11
**witnesses (7)**
9:2;12:25;16:10;
20:9;21:4;23:19,20
**WOLSTEIN (29)**
3:17,18;15:7,8,18,
20,23;16:3,6,8;17:3,
13,17;18:10,15,19;
19:1,4,7,12,21,25;
20:10;22:15,16;26:1,
17,25;27:7
**words (1)**
11:3
**work (1)**

13:16
**writing (1)**
12:9
**wrong (2)**
22:21;23:1

**1**

**1 (1)**
4:2
**100,000-foot (1)**
22:13
**12th (1)**
24:22

**2**

**20-cv-891 (1)**
3:2
**2E (2)**
19:13,15
**2nd (1)**
15:25

**3**

**3500 (1)**
7:3
**3rd (2)**
24:4;25:1

**4**

**4 (1)**
17:5

**7**

**7/10 (1)**
24:2