Elizabeth Wolstein
Partner

Direct: 212 612-0688
ewolstein@schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

November 3, 2022

**By ECF**

Honorable Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Diaz Cruz v. United States & Henry V. Santana*, No. 20-CV-00891 (EK) (SJB)

Dear Judge Komitee:

This Firm represents Defendant Henry V. Santana, a U.S. Immigration and Customs Enforcement Officer, in the above-referenced *Bivens* and Federal Tort Claims Act ("FTCA") action. On October 25, 2022, the Court heard argument on Mr. Santana's motion to dismiss the *Bivens* claims. We write respectfully to address certain issues raised during argument concerning the Supreme Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022)—decided after briefing was completed—and subsequent case law.

As the Tenth Circuit observed in the wake of *Egbert*, "[t]he story of *Bivens* is a saga played out in three acts: creation, expansion, and restriction." *Silva v. United States*, 45 F.4th 1134, 1138 (10th Cir. 2022). In *Egbert*, the Supreme Court left "no doubt" that *Bivens* "is an action that is impermissible in virtually all circumstances." *Id*. at 1138.

As detailed below, and in our letter of June 22, 2022, ECF No. 57, because this case presents a new context (*Ziglar* Step 1), and because there are multiple rational reasons to conclude that Congress is better situated to weigh the costs and benefits of extending the *Bivens* remedy here (*Ziglar* Step 2, as refined by *Egbert*), Plaintiff has no *Bivens* claim as a matter of law.

***Egbert* Leaves No Doubt That This Case Presents A New Context**

*Egbert* "present[ed] 'almost parallel circumstances,'" 142 S. Ct. at 1805, to the claims at issue in *Bivens*, yet the key difference in *Egbert*—that it involved the enforcement of border control laws—was enough to present a new context. Underscoring that the new context analysis is well-understood to be satisfied by even a "modest" extension, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017), *Egbert* was not a close call by any stretch—the district court, the Ninth Circuit, and the Supreme Court all agreed that the claim presented a new context. *See Egbert*, 142 S. Ct. at 1804.

If *Egbert* arose in a new context, there can be no doubt that this case, also involving a "new category of defendants," *Ziglar*, 137 S. Ct. at 1857—*i.e.*, a federal agent enforcing immigration law—arises in a new context. Indeed, post-*Egbert* decisions uniformly hold that

Honorable Eric Komitee
November 3, 2022
Page 2 of 4

the fact that the defendant is an ICE officer enforcing immigration law, as opposed to an FBI or analogous federal agent enforcing criminal or narcotics laws, constitutes a meaningful difference from *Bivens. See Muzumala v. Mayorkas*, No. 22-CV-3789 (JGK), 2022 WL 2916610, at *5 (S.D.N.Y. July 22, 2022) (*Bivens* claims against ICE officer and other immigration officials, "like the suit in *Egbert*, implicate national security, and therefore a *Bivens* action against them cannot lie"); *Barry v. Zamar*, No. 19-10216 (EP) (LDW), 2022 WL 4774398, at *6 (D.N.J. Oct. 3, 2022) ("ICE Officer Zamar qualifies as a new category of defendant because as an ICE agent he is charged with the enforcement of immigration laws, not criminal laws"); *Hernandez v. Causey*, No. 2:17-cv-123-TBM-MTP, 2022 WL 4594023, at *11-12 (S.D. Miss. Sept. 29, 2022) (Plaintiff's Fourth Amendment claim "for being shot while unarmed and with his hands allegedly in the air" against ICE officer presented a new context because the "claim is unfortunately indistinguishable from countless such claims brought against federal, state, and local law enforcement officials—except that Causey is an ICE agent" and, further because "narcotics were not involved in this case. Instead, the dispute that gave rise to Hernandez's claims involved a shooting by an ICE agent.").

There are, moreover, additional factors that add to the new context here as outlined in our brief. *See* ECF No. 48-1 at 5-13. Among other things, the events at issue here, unlike in those in *Bivens*, occurred outside, in a front yard and on a public street, while the agents in *Bivens* engaged in the alleged search and seizure inside the plaintiff's home. *Id.* at 8-9; *see also Hernandez,* 2022 WL 4594023, at *11-12 (shooting by ICE officer on the street, as opposed to on private property, constituted an additional meaningful difference). The plaintiff here was also not the target of the ICE enforcement operation that day, but a third party. In these respects, this case is even further removed from *Bivens.*

Plaintiffs' contention that it is sufficient under *Bivens* simply to allege a Fourth Amendment violation by a federal line agent for specific behavior, as opposed to a generalized policy, is patently incorrect. That notion was squarely rejected by *Egbert*, which was a Fourth Amendment claim against a federal line agent for his specific conduct, as well as by countless other decisions, as discussed in our brief. *See Egbert,* 142 S. Ct. at 1806 (We ask "whether a court is competent to authorize a damages action not just against Agent Egbert but against Border Patrol agents generally. The answer, plainly, is no."); *see also Gilson v. Alvarez*, No. EP-21-CV-00110-DCG, 2022 WL 3274164, at *5 (W.D. Tex. Aug. 11, 2022) (*Egbert* "illustrates that even if a lawsuit involves line level agents, that does not alone situate that case within the same context as *Bivens*."); *see* ECF No. 48-4 at 3-6.

Plaintiff also contends, incorrectly, that a key fact distinguishing this case from *Egbert* was that it involved a Border Patrol agent near the border, and thus presented national security concerns not present here because this case involves an ICE agent who was not operating at the border. But the Supreme Court rejected that argument, observing that "immigration investigations in *this* country are perhaps *more* likely to impact the national security of the United States." *Egbert*, 142 S. Ct. at 1806 (emphasis in original). Further, Plaintiff is simply

Honorable Eric Komitee
November 3, 2022
Page 3 of 4

wrong that the work of an ICE agent does not implicate national security concerns. ICE's mission, in its own words, is to enforce immigration laws "to preserve national security" and to "[s]ecur[e] our nation's borders," https://www.ice.gov/mission, a fact recognized by the Fourth Circuit before *Egbert* in *Tun-Cos v. Perrotte*, 922 F.3d 514, 524-26 (4th Cir. 2019) (dismissing *Bivens* claim against ICE agents and observing that immigration enforcement affects "diplomacy, foreign policy, and the security of the nation"), and in all post-*Egbert* decisions involving ICE of which we are aware. The Supreme Court's analysis in *Egbert* with respect to national security and separation of powers concerns applies with full force here.

### *Egbert* Forecloses Extension Of *Bivens* Here Because An FTCA Remedy Is Available

*Egbert* forecloses extension of *Bivens* here, not only because immigration enforcement involves national security concerns as in *Egbert*, but if for no other reason than Congress has already provided Plaintiff with an alternative remedy in the FTCA. Because this case presents a new context, the Court may not create a Bivens remedy if "there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert,* 142 S. Ct. at 1805. In *Egbert*, the Court held that the existence of an alternative remedy—a grievance procedure that did not provide for damages or allow the plaintiff to participate in the process or seek judicial review—"independently foreclose[d] a *Bivens* action." *Id.* at 1806-07.

The FTCA provides a plaintiff with far greater relief than the process the Court held sufficient in *Egbert*. The statute creates a cause of action for damages in Plaintiff's favor, which comes with full appeal rights in the manner of any other federal court plaintiff. Even prior to *Egbert*, courts within the Second Circuit overwhelmingly held that the existence of an FTCA claim forecloses the extension of a *Bivens* remedy, as detailed in our briefs. *See* ECF No. 48-1 at 13-15, ECF No. 48-4 at 6-7. Since *Egbert,* the two Eastern District decisions to address the issue have agreed. *See Mendoza v. Edge*, 20-CV-3032 (AMD) (TAM), 2022 WL 3097377, at *4 (E.D.N.Y. July 12, 2022) (FTCA forecloses new *Bivens* remedy in case involving excessive force); *Johnson v. Santiago*, No. 20-CV-6345 (KAM) (LB), 2022 WL 3643591, at *4 (E.D.N.Y. Aug. 24, 2022) ("In light of the Supreme Court's language in *Abbasi, Hernandez*, and *Boule*, the Court finds that the FTCA is an alternative remedy that precludes a *Bivens* claim" and "agrees with the many cases that have concluded—following the Supreme Court's decision in *Abbasi*—that the remedies provided by the [FTCA] constitute a special factor counseling hesitation in extending *Bivens*.") (internal quotations and alterations omitted). After *Egbert*, any contrary determination would be squarely at odds with *Egbert*.

For the reasons set forth above, in our briefing (ECF Nos. 48-1, and 48-4), and in our letter of June 22, 2022 (ECF No. 57), Plaintiff's *Bivens* claims (Counts I and II) should be dismissed.

Honorable Eric Komitee
November 3, 2022
Page 4 of 4

Respectfully submitted,

*Elizabeth Wolstein*

Elizabeth Wolstein


cc: All Counsel of Record
    (by ECF)