```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

  ERICK DIAZ CRUZ,

                    Plaintiff,                MEMORANDUM & ORDER
                                              20-CV-891(EK)(SJB)

          -against-

  UNITED STATES OF AMERICA and HENRY V.
  SANTANA, Officer of U.S. Immigration
  and Customs Enforcement,

                    Defendants.

--------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Plaintiff Erick Diaz Cruz, a citizen of Mexico, brings this suit against the United States and Henry Santana, an officer of U.S. Immigration and Customs Enforcement ("ICE"). Diaz Cruz alleges that Officer Santana violated the Fourth Amendment's prohibition against excessive force and, through the same application of force, the due process clause of the Fifth Amendment. Diaz Cruz asserts these two claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He also asserts a claim against the United States under the Federal Tort Claims Act. He seeks declaratory relief and money damages.

Officer Santana has moved to dismiss the two *Bivens* claims. For the reasons set forth herein, that motion is granted.

## I. Background

The following facts are taken from Diaz Cruz's second amended complaint ("SAC") and presumed to be true for purposes of this motion. ECF No. 29. Diaz Cruz is a native of Veracruz, Mexico. SAC ¶ 14. After obtaining tourist visas to visit family in the United States, he and his partner, Jennifer, arrived in New York on January 25, 2020 for a two-week vacation. *Id.* ¶¶ 17-18. He and Jennifer stayed with his mother, Carmen Cruz, at her home in Brooklyn, where she was living with her long-time partner Gaspar Avendaño-Hernandez. *Id.* ¶ 19.

On the morning of February 6, 2020, Diaz Cruz awoke in his mother's home to "banging on the door and men shouting." *Id.* ¶ 21. He then heard "screaming and crying on the street," prompting him to get dressed and exit the house. *Id.* ¶ 22. Once outside, he saw two ICE officers — Henry Santana and Sherman Chan — engaged in a struggle with Avendaño-Hernandez in the middle of the street. *Id.* ¶¶ 12, 23, 25. During that struggle, Diaz Cruz saw Santana and Chan "repeatedly using a taser" on Avendaño-Hernandez and "attempting to place him in handcuffs and move him towards their vehicle." *Id.* ¶ 29. But Avendaño-Hernandez ran away from the officers and back toward Cruz's home. *Id.* ¶ 30. Officer Santana gave chase. *Id.*

While Officer Santana attempted to detain Avendaño-Hernandez, Diaz Cruz approached them and stopped on the stairs

2

to the house near the front door. *Id.* ¶¶ 32-34. At that point, he was facing Santana from about four feet away, with Avendaño-Hernandez standing between them. *Id.* ¶¶ 34-36. Santana did not instruct Diaz Cruz to move away — or, indeed, to take or cease any action. *Id.* ¶ 37. Seconds later, Diaz Cruz saw Santana reach with his right hand toward his right hip. *Id.* ¶ 38. Thinking that Santana was reaching for pepper spray, Diaz Cruz covered his face with his left hand to protect his eyes. *Id.* ¶ 39. Instead, Santana removed his gun, pointed it at Diaz Cruz's face, and — without warning — fired. *Id.* ¶¶ 40-41.

The bullet that Officer Santana fired passed through Diaz Cruz's hand and entered his left check, causing him to collapse and bleed profusely. *Id.* ¶ 43. Diaz Cruz was unarmed and alleges that Santana had no reason to believe that he was armed. *Id.* ¶ 46. He was not wearing a jacket or other clothing that could have concealed a weapon, and at no point did he reach either hand toward his pants. *Id.* ¶ 47. He made no threatening statements or movements toward Santana. *Id.* ¶ 48. In sum, Diaz Cruz alleges that he did not pose a danger to Santana or anyone else and that Santana had no reason to believe otherwise. *Id.* ¶¶ 45-49.

## II.  Legal Standard

On a motion to dismiss under Rule 12(b)(6), "the court's task is to assess the legal feasibility of the

3

complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).[1]  In doing so, the court "must take the facts alleged in the complaint as true, drawing all reasonable inferences" in the plaintiff's favor.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

### III. Discussion

**A.**   ***Bivens* Landscape Post-*Egbert***

When it decided the *Bivens* case in 1971, the Supreme Court recognized an implied cause of action for damages for an alleged violation of the Fourth Amendment against agents of the Federal Bureau of Narcotics.  403 U.S. at 389.  Over the following decade, the Supreme Court recognized two additional causes of action under the Constitution: first, a Fifth Amendment sex-discrimination claim by a former congressional staffer, *see Davis v. Passman*, 442 U.S. 228 (1979); and second,

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits citations and internal quotation marks.

an Eighth Amendment inadequate-care claim by a federal prisoner. *See Carlson v. Green*, 446 U.S. 14 (1980).

Since *Carlson*, however, the Supreme Court has found no new implied cause of action in the Constitution, despite having considered the question at least twelve times. *See Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800 (2022). Recently, the Supreme Court stated that if it were "called to decide *Bivens* today," it "would decline to discover any implied causes of action in the Constitution." *Id.* at 1809. Although it has so far declined to "dispense with *Bivens* altogether," the Supreme Court now emphasizes that "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id.* at 1803. "Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Id.* The message from the Supreme Court is clear: "in all but the most unusual circumstances," Congress, not the courts, is the proper forum for creating a new private right of action. *Id.* at 1800.

Prior to *Egbert*, the Supreme Court had prescribed a two-step process for evaluating requests to imply new constitutional causes of action. *Id.* at 1803. The court first must determine whether the case presents "a new *Bivens* context" — in other words, whether the case differs "meaningfully" from the three cases in which the Supreme Court has implied a cause of action. *Id.* A new context may arise, for example, when a

5

case involves a "new category of defendants." *Id.* If a new context is present, the court then must consider whether any "special factors" counsel against implying a new cause of action. *Id.* Although the Supreme Court has not defined with precision what makes a factor "special," it has instructed that the key inquiry is whether "there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *Id.* at 1805. "If so, or even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.*

The *Egbert* decision essentially collapsed this two-step analysis into a single question while establishing an even stronger presumption against new *Bivens* claims. The Supreme Court explained that "a new context" will be found anytime "there are potential special factors that previous *Bivens* cases did not consider." *Id.* at 1803. Accordingly, a proposed *Bivens* claim will often rise or fall on the answer to one question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* In any given case, the Supreme Court advised, the answer to this question is likely to be yes: "Even in a particular case, a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief." *Id.* at 1803-04. In

6

other words, the "newness" of a claim "should alone require dismissal." *Id.*

The bar for concluding that a claim falls outside the existing *Bivens* contexts is low. A claim may arise in a new context even when — compared with a previously recognized *Bivens* claim — the claim is based on the same constitutional provision, presents "almost parallel circumstances," and involves a "similar mechanism of injury." *Id.* at 1805. In *Egbert*, for example, the Supreme Court declined to extend *Bivens* to the plaintiff's Fourth Amendment excessive force claim against a U.S. Border Patrol agent despite having recognized an ostensibly similar Fourth Amendment excessive force claim against federal narcotics agents in *Bivens* itself. *Id.* There, the Supreme Court identified two special factors that independently precluded the recognition of a cause of action under *Bivens*: the claim arose in the national security context, and the plaintiff had alternative remedies under federal law. *Id.* at 1805-06.

**B.   Diaz Cruz's *Bivens* Claims**

   1.   <u>Fourth Amendment Claim</u>

Diaz Cruz argues that his Fourth Amendment claim against Officer Santana is well within the heartland of the original implied cause of action under *Bivens*. In support of this argument, Diaz Cruz cites a post-*Egbert* decision from the Eastern District of Oklahoma in which the court denied a motion

7

to dismiss a Fourth Amendment *Bivens* claim alleging excessive force against federal law enforcement officers. Pl.'s Supplemental Letter 1-2, ECF No. 64.[2] That decision — *Logsdon v. U.S. Marshal Service*, 21-CV-253, 2022 WL 14150763 (E.D. Okla. Oct. 21, 2022) — was subsequently reversed on reconsideration. *See Logsdon v. United States Marshal Serv.*, 21-CV-253, 2023 WL 205052 (E.D. Okla. Jan. 13, 2023). In reversing itself, the district court recognized that the claim presented a new *Bivens* context because — among other reasons — the officers were employed by the U.S. Marshals Service, not the Drug Enforcement Administration (the successor to the Bureau of Narcotics). *Id.* at *3. Further, the court determined that two special factors counseled against recognizing the *Bivens* claim: first, that the court was not better suited than Congress to create a damages action against a new category of defendants, and second, that the plaintiff had alternative remedies available, including the FTCA. *Id.* at *4. An order of dismissal is compelled here for similar reasons.

Under the Supreme Court's restrictive rubric, this case plainly presents a new context. First, Officer Santana is an ICE agent, whereas *Bivens* involved federal narcotics agents.

---

[2] The parties' briefs for the instant motion were submitted prior to the Supreme Court's decision in *Egbert*. In light of that decision, the Court invited the parties to submit supplemental letters concerning the decision's impact on this case.

*Cf. Tun-Cos v. Perrotte*, 922 F.3d 514, 525 (4th Cir. 2019) (*Bivens* claims presented new context because, among other reasons, the defendants were ICE agents, not federal narcotics agents); *Lewis v. Westfield*, No. 16-CV-1057, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022) (new context in part because the defendants were Deputy Marshals, not federal narcotics agents). Further, as an ICE deportation officer, Officer Santana was operating under a different statutory mandate — immigration law – than the officers in *Bivens*, who were enforcing federal drug law. *See, e.g.*, *Tun-Cos*, 922 F.3d at 524 (ICE agents operated under a "distinct" legal mandate, as compared with the narcotics officers in *Bivens*). Per *Egbert*, the newness of this context alone precludes Diaz Cruz's claim. *See* 142 S. Ct. at 1804.

      Further, that the claim arises in the context of immigration enforcement is a factor favoring dismissal. In the border context, the Supreme Court has readily invoked national security as a special factor. *See id.* at 1805 (border enforcement); *Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020) (same). "Because matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention," the Supreme Court has explained, "a *Bivens* cause of action may not lie where . . . national security is at issue." *Egbert*, 142 S. Ct. at 1804-05.

9

Although *Hernandez* and *Egbert* involved incidents at the border, the Supreme Court's reasoning in the latter case suggests that immigration enforcement in general implicates national security. *See id.* at 1806 (explaining that "immigration investigations in *this* country are perhaps *more* likely to impact the national security of the United States" than such investigations occurring outside the United States). Indeed, in a recent case following *Egbert*, a district court determined that the identity of the defendants' employers — ICE and the Department of Homeland Security — was dispositive for this reason. *See Muzumala v Mayorkas*, No. 22-CV-3789, 2022 WL 2916610, at *5 (S.D.N.Y. July 22, 2022). The court held that "[s]uits against such officials, like the suit in *Egbert*, implicate national security, and therefore a *Bivens* action against them cannot lie." *Id.* This conclusion is of course consistent with the broad deference accorded to the executive branch in many matters of immigration enforcement.

2. Fifth Amendment Claim

Diaz Cruz's Fifth Amendment substantive due process claim suffers from the same shortcomings. Indeed, Diaz Cruz "acknowledges that his Fifth Amendment claim arguably constitutes a new *Bivens* 'context.'" Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss 23, ECF No. 48-3. Although *Passman* concerned a Fifth Amendment substantive due process claim, it

arose from alleged sex discrimination by a member of Congress against an individual on his staff.  *See generally* 442 U.S. 228.  That fact pattern bears virtually no resemblance to the instant context.

The same special factor that precludes Diaz Cruz's Fourth Amendment *Bivens* claim also precludes this claim.  Accordingly, the Fifth Amendment claim likewise fails.

### IV. Conclusion

For the foregoing reasons, Officer Santana's motion to dismiss is granted.  Diaz Cruz's Fourth and Fifth Amendment *Bivens* claims are dismissed with prejudice.  This conclusion may be dissatisfying, given that the allegations here are substantially more serious than those at issue in *Bivens* itself.  But this Court's task is not to assess the severity of the allegations – only whether the Constitution permits a private right of action for the asserted claims.  The Supreme Court's recent guidance compels the answer that Diaz Cruz cannot pursue a *Bivens* action on the facts alleged.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    March 20, 2023
          Brooklyn, New York